[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 99-11034

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 11, 2000
THOMAS K. KAHN
CLERK

D. C. Docket No. 98-06496-CV-WDF

WOLF PRADO-STEIMAN,
by and through his mother and next friend
Laura Prado, M.C., by and through his mother
and next friend, et al.,

Plaintiffs-Appellees,

versus

JEB BUSH, in his official capacity as
Governor and Chief Executive of the State
of Florida, KATHLEEN KEARNEY, in her
official capacity as Secretary, Department of
Children and Families, et al.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(August 11, 2000)**

Before EDMONDSON and MARCUS, Circuit Judges, and STROM[*], District
Judge.

MARCUS, Circuit Judge:

_____

[*]Honorable Lyle E. Strom, U.S. District Judge for the District of Nebraska, sitting by
designation.

This is an interlocutory appeal from a class certification order. It also marks our first opportunity to explicate the circumstances in which a court of appeals should exercise its discretion to accept such an appeal under Federal Rule of Civil Procedure 23(f).

Defendants, Governor Jeb Bush and other named state officials, appeal the district court's order certifying a broad class of developmentally-disabled persons eligible for Florida's Home and Community Based Waiver Program, which provides Medicaid-related services in home- and community-based settings to individuals who meet certain level-of-care requirements. All parties agree that some kind of class or classes should be certified, but Defendants contend that the single class certified by the district court was too broad. Defendants specifically assert that Plaintiffs have not demonstrated that the claims of the named class representatives possess the requisite typicality with the claims of the class at large as required by Fed. R. Civ. P. 23(a). We agree and vacate the class certification order. On remand, the district court must ensure that at least one of the named class representatives possesses the requisite individual or associational standing to bring each of the class's legal claims.

I.

A.

The named plaintiffs are individuals with developmental disabilities who meet the level-of-care requirements of an intermediate care facility for individuals with developmental disabilities ("ICF/DD") under the Medicaid Act, Title XIX of the Social Security Act, 42 U.S.C. § 1396, et seq.[1]  Medicaid is a cooperative federal-state program through which the federal government furnishes financial assistance to the states so that the states may provide necessary medical, rehabilitation, and other services to low-income persons.  At present, the federal government pays for about 55% of the cost of Medicaid services in Florida.  State participation in Medicaid is voluntary, but participating states must comply with

---

[1]Under the ICF/DD program:

> Each client must receive a continuous active treatment program, which includes aggressive, consistent implementation of a program of specialized and generic training, treatment, health services and related services . . ., that is directed toward –
>
> (i) The acquisition of the behaviors necessary for the client to function with as much self determination and independence as possible; and
>
> (ii) The prevention or deceleration of regression or loss of current optimal functional status.

42 C.F.R. § 483.440(a)(1)(i)-(ii) (1996).  The ICF/DD program is restricted to individuals with sufficiently severe mental retardation and related conditions.  It is not designed for "generally independent clients who are able to function with little supervision or in the absence of a continuous active treatment program."  42 C.F.R. § 483.440(a)(2) (1996).

3

certain requirements imposed by the Act as well as regulations promulgated by the Secretary of Health and Human Services ("Secretary").  Those provisions allow state Medicaid plans to apply a "medical necessity" test to all applicants to ensure that applicants receive medical services in order of need.  However, state plans are required to provide "an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness."  42 U.S.C. § 1396(a)(3); see also 42 C.F.R. § 431.200, et seq.

Under the Home and Community Based Services Waiver Act, Title XIX of the Social Security Act, 42 U.S.C. § 1396n(c), Congress has authorized certain persons with developmental disabilities to receive Medicaid services in a community setting rather than in an institutional facility.  The Act empowers the Secretary to grant a waiver to a state under which approved costs of home- and community-based services are reimbursed for eligible individuals who otherwise would require care in an ICF/DD facility, but who instead elect to remain in their homes.  42 U.S.C. § 1396n(c).  To qualify for a waiver, a state must develop alternative regulatory schemes aimed at lowering the cost of medical assistance

4

while still maintaining the same level of care.[2]  Florida has chosen to participate in the Medicaid Home and Community Based Waiver Program.[3]

B.

On May 13, 1998, two of the named plaintiffs, Wolf Prado-Steiman and Marlon Christie, filed a class action lawsuit alleging that various Florida state officials in their official capacity, including the Governor and the Secretary of the Department of Children and Families, have acted unlawfully in their governance of Florida's Home and Community Based Medicaid Waiver Program.  Plaintiffs allege violations of the American with Disabilities Act, 42 U.S.C. § 12101, et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; Title XIX of the Social Security Act, 42 U.S.C. §§ 1396a, et seq., 1396n, et seq., and 42 C.F.R. § 431.200; the Due Process Clause; and 42 U.S.C. § 1983.  Specifically, Plaintiffs contend that, contrary to federal law, state officials routinely deny or provide without reasonable promptness critical "Home and Community Based Waiver"

---

[2]Although the Waiver Act excuses states from satisfying all of the Medicaid Act's requirements, see 42 U.S.C. § 1396n(c)(3), it does not authorize the Secretary to waive any sections of the Medicaid Act governing the health, safety, or welfare of Medicaid recipients.  Moreover, the Secretary may not grant a waiver unless a state provides assurances that its waiver plan includes "necessary safeguards" to protect the health and welfare of individuals provided services under the waiver.  42 U.S.C. § 1396n(c)(2)(A).

[3]Florida's Home and Community Based Waiver Program is outlined in detail at Fla. Admin. Code § 59G-8.200.  The specific provisions of this Program are not at issue in this appeal.

5

("HCBW") services for Medicaid-eligible, developmentally-disabled persons based on funding concerns rather than medical necessity concerns.[4]

Plaintiffs assert that as a result of this policy many developmentally-disabled persons who desire HCBW services have been forced to reside in institutional facilities in order to receive Medicaid services. Plaintiffs also allege that Defendants systematically deny Medicaid-eligible, developmentally-disabled persons who apply for HCBW services the procedural due process protections required by the Medicaid Act, including notice of their right to appeal adverse decisions and to continue receiving benefits pending appeal, as well as the opportunity for a fair hearing if their claims are denied or not acted upon with reasonable promptness.[5] Plaintiffs seek, among other things, declaratory and

---

[4]In <u>Doe v. Chiles</u>, we held that a "federal right to reasonably prompt provision of assistance under section 1396a(a)(8) of the Medicaid Act" exists, and "that this right is enforceable under section 1983." 136 F.3d 709, 719 (11th Cir. 1998). Under section 1396a(a)(8), "[a] State plan for medical assistance must . . . provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8). A corresponding federal regulation requires that the responsible state agency "[f]urnish Medicaid promptly to recipients without any delay caused by the agency's administrative procedures," and "[c]ontinue to furnish Medicaid regularly to all eligible individuals until they are found to be ineligible." 42 C.F.R. § 435.930(a)-(b) (1996).

[5]Federal Medicaid regulations provide that a state "must establish time standards for determining eligibility and inform the applicant of what they are." 42 C.F.R. § 435.911(a) (1996). These periods are not to exceed "[n]inety days for applicants who apply for Medicaid on the basis of disability" or "[f]orty-five days for all other applicants." 42 C.F.R. § 435.911(a)(1)-(2) (1996). In addition, the state "must not use the time standard" as "a waiting period." 42 C.F.R. § 435.911(e)(1) (1996).

injunctive relief which would require Defendants to provide necessary HCBW services to eligible persons and to comply with Medicaid procedural requirements in their adjudication and denial of HCBW services.

On July 31, 1998, Plaintiffs amended the complaint by right, adding four new individual plaintiffs, Lucy Adawi, Jennifer Batsidas, Daniel Lavin, and Daniel Shell, and one institutional plaintiff, the Advocacy Center for Disabled Persons, Inc. Plaintiffs then moved for class certification. On January 19, 1999, Plaintiffs sought to amend their complaint a second time to add, among other things, twelve further individual plaintiffs as well as a cause of action to enforce certain sections of the Medicaid Act requiring states participating in Medicaid to provide early and periodic screening, diagnosis, and treatment ("EPSDT") to eligible persons under the age of 21. On February 19, 1999, the court held a hearing on Plaintiffs' motion for class certification at which it apparently granted Plaintiffs' request to file the second amended complaint.

In March 1999, the district court granted the class certification motion. It identified as class representatives all seven of the plaintiffs named in the first amended complaint, but declined to identify as class representatives the twelve

7

new plaintiffs added in the second amended complaint until Defendants could complete discovery.[6] The court defined the class as follows:

---

[6]The First Amended Complaint named six individual plaintiff class representatives -- Wolf Prado-Steiman, Lucy Adawi, Marlon Christie, Daniel Lavin, Jennifer Batsidas and Daniel Shell -- and one institutional plaintiff class representative -- the Advocacy Center for Persons with Disabilities, Inc. Four of the individual plaintiffs -- Prado-Steiman, Adawi, Christie, and Lavin -- have applied for HCBW services but have been denied coverage. The other two individual plaintiffs -- Batsidas and Shell -- currently receive HCBW services they allege are inadequate.

The following facts pertain to each named plaintiff:

(1) Wolf Prado-Steiman

Wolf is an eight year-old autistic boy who lives at home with his family. There is no dispute that he suffers from severe behavioral problems as a result of his disability. Plaintiffs contend that Wolf, having no assets or income, would be eligible for a HCBW waiver. He has applied for HCBW services and received no written determination on his claim. After this suit was filed, Defendants agreed to pay for 12 behavioral therapy sessions. In an institutional setting, his care would be on-going.

(2) Lucy Adawi

Lucy is a fifty year-old mildly retarded woman with a schizoaffective disorder who lives with her 80 year-old mother. She applied for HCBW services but has received only $44 of necessary medical supplies

(3) Marlon Christie

Marlon Christie is an 18 year-old man with cerebral palsy who must sleep on the floor because he lacks an appropriate bed at home. He applied for HCBW services but was told there is a long waiting list and no available services.

(4) Daniel Lavin

Daniel Lavin is a 22 year-old man with severe mental retardation and cerebral palsy who needs bathroom modifications to make the room handicap-accessible. He applied for HCBW services but has received no services as yet due to his low priority rating on the waiting list. He has not received written notice of a denial of his request.

(5) Jennifer Batsidas

[A]ll persons with developmental disabilities who are presently receiving Home and Community-Based Waiver Services or who are eligible to receive Home and Community-Based Waiver Services, or who would receive or be eligible for Home and Community-Based Waiver Services in the future.

The district court also identified ten substantive, classwide claims:

a. whether Defendants have violated the ADA by denying individuals, who live in their own homes or with their families in community settings, services such as physical therapy, speech therapy, and dental services that are available to individuals who are ICF/DD's;

b. whether Defendants have violated the ADA by engaging in diagnosis-based decision-making with their actions to deny or limit access to benefits, services, and opportunities because a person has a particular disability;

c. whether Defendants have violated § 504 of the Rehabilitation Act of 1973;

---

Jennifer Batsidas is a quadriplegic with cerebral palsy. She applied for HCBW services in January 1998 and was not placed on a waiver until October 1998 due to a lack of state funds. She received these funds only after a district coordinator identified her needs as "critical." She presently receives funds on a "funds available basis." She alleges that the vocational services she receives from the HCBW Program are inadequate.

(6) Daniel Shell

Daniel Shell is a 32 year-old man with moderate mental retardation and cerebral palsy currently receiving HCBW services in the form of a vocational service workshop. He allegedly has been denied physical therapy equipment recommended by his physician to treat his movement disorder. The equipment was requested in March 1998 and a hearing was not scheduled until January 1999. No hearing decision has yet been made. Shell alleges the services currently provided to him are inadequate.

d. whether Defendants have violated the Medicaid statute's requirement of reasonable promptness, 42 U.S.C. § 1396a(8) and 42 U.S.C. § 1983, by failing to provide Medicaid Waiver Services with reasonable promptness;

e. whether Defendants have violated 42 U.S.C. § 1396n and 42 U.S.C. § 1983, by providing inadequate and inappropriate Home and Community-Based Waiver Services;

f. whether Defendants have violated 42 U.S.C. § 1396n and 42 U.S.C. § 1983, by funding institutional placements using Home and Community-Based Waiver Services;

g. whether Defendants have violated 42 U.S.C. § 1396n(c)(2) and 42 U.S.C. § 1983, by denying Plaintiffs their freedom of choice of an appropriate Home and Community-Based Waiver program that meets their health and welfare needs;

h. whether Defendants have violated Medicaid's statewideness requirement, 42 U.S.C. § 1396a(a)(1), and 42 U.S.C. § 1983, by failing to provide Home and Community-Based Waiver services throughout the State of Florida;

i. whether Defendants have violated Medicaid's EPSDT requirements, violated 42 U.S.C. § 1396(a)(43)(C) and 42 U.S.C. § 1983, by failing to provide needed EPSDT services directly and to ensure that there are providers who are qualified and willing to provide EPSDT services for children with developmental disabilities;

j. whether Defendants have violated the Due Process Clause of the U.S. Constitution and 42 U.S.C. § 1983, by denying Plaintiffs and class members procedural due

10

process, including notice and the opportunity for a fair hearing to challenge denials, reductions, and termination of Home and Community-Based Waiver benefits.

Applying the prerequisites for class certification required by Federal Rule of Civil Procedure 23(a), the district court concluded: first, that there were over 20,000 estimated class members, satisfying Rule 23(a)(1) numerosity's requirement; second, that there was sufficient commonality between the questions of law and fact posed by the class suit despite the class members' varying medical conditions, satisfying Rule 23(a)(2)'s commonality requirement; third, that there was a sufficient nexus between these common questions of law and fact and the named representatives' claims, satisfying Rule 23(a)(3)'s typicality requirement; and finally, that the named representatives satisfied Rule 23(a)(4)'s adequacy of representation requirement. The district court also concluded that class status was warranted under Rule 23(b)(2) because the class requested injunctive relief and Defendants had generally refused to act on grounds applicable to the class.

Defendants then petitioned our court pursuant to Federal Rule of Civil Procedure 23(f) for an interlocutory appeal of the district court's class certification order. We granted that petition on May 12, 1999, having taken into account the matters set forth below.

II.

11

We start by discussing Federal Rule of Civil Procedure 23(f), which allows

federal courts of appeals to hear an interlocutory appeal of a district court's order

granting or denying class certification. The Rule, which became effective on

December 1, 1998, reads as follows:

> A court of appeals may in its discretion permit an appeal
> from an order of a district court granting or denying class
> action certification under this rule if application is made
> to it within ten days after entry of the order. An appeal
> does not stay proceedings in the district court unless the
> district judge or the court of appeals so orders.

Fed. R. Civ. P. 23(f). This case is the first published opinion in this circuit, and

one of the first in the nation, to address the standards to be used when evaluating a

Rule 23(f) petition. Thus far, only the First and Seventh Circuits have explored

this question in detail. See Waste Management Holdings, Inc. v. Mowbray, 208

F.3d 288 (1st Cir. 2000); Blair v. Equifax Check Services, Inc., 181 F.3d 832 (7th

Cir. 1999). We therefore begin our discussion with background on Rule 23(f), and

then set forth some guideposts for evaluating when we should permit a Rule 23(f)

appeal.

## A.

A good starting point is the Committee Note accompanying Rule 23(f),

which articulates the drafters' view of how courts should resolve petitions for

appeal under this new rule. The Note emphasizes that "the court of appeals is

12

given unfettered discretion whether to permit the appeal, akin to the discretion exercised by the Supreme Court in acting on a petition for certiorari. . . . Permission to appeal may be granted or denied on the basis of any consideration that the court of appeals finds persuasive." Id. The Note then observes that "[p]ermission [to appeal] is most likely to be granted when the certification decision turns on a novel or unsettled question of law, or when, as a practical matter, the decision on certification is likely dispositive of the litigation." Id. According to the Note:

> [M]any suits with class-action allegations present familiar and almost routine issues that are no more worthy of immediate appeal than many other interlocutory rulings. Yet several concerns justify expansion of present opportunities to appeal. An order denying certification may confront the plaintiff with a situation in which the only sure path to appellate review is by proceeding to final judgment on the merits of an individual claim that, standing alone, is far smaller than the costs of litigation. An order granting certification, on the other hand, may force a defendant to settle rather than incur the costs of defending a class action and run the risk of potentially ruinous liability.

Id.

As summarized by the First Circuit, Rule 23(f) serves two key purposes: first, to provide a "mechanism through which appellate courts, in the interests of fairness, can restore equilibrium when a doubtful class certification ruling would

13

virtually compel a party to abandon a potentially meritorious claim or defense before trial"; and second, to "furnish[] an avenue, if the need is sufficiently acute, whereby the court of appeals can take earlier-than-usual cognizance of important, unsettled legal questions, thus contributing to both the orderly progress of complex litigation and the orderly development of the law." Mowbray, 208 F.3d at 293.

Based on these purposes, the Seventh Circuit in Blair outlined three categories of cases for which Rule 23(f) review may be appropriate. As summarized in Mowbray:

> First, an appeal ordinarily should be permitted when a denial of class status effectively ends the case (because, say, the named plaintiff's claim is not of a sufficient magnitude to warrant the costs of stand-alone litigation). Second, an appeal ordinarily should be permitted when the grant of class status raises the stakes of the litigation so substantially that the defendant likely will feel irresistible pressure to settle. Third, an appeal ordinarily should be permitted when it will lead to clarification of a fundamental issue of law.

Id.

The Seventh Circuit put additional gloss on these three broad categories. It explained that a petitioner who sought to invoke either of the first two categories also would have to "demonstrate that the district court's ruling on class certification is questionable -- and must do this taking into account the discretion the district judge possesses in implementing Rule 23, and the correspondingly

14

deferential standard of appellate review." Blair, 181 F.3d at 835. The court further observed that when reviewing petitions invoking the third and final category, it would focus on the importance of the issue to be resolved, more so than the likelihood of reversal. See id. Finally, it noted that even when an application touts a supposedly fundamental issue of law, a showing that an end-of-case appeal promises to be an adequate remedy will weigh heavily against granting a Rule 23(f) application. See id.

Recently, the First Circuit adopted Blair's Rule 23(f) taxonomy as "structurally sound" with one notable caveat. Mowbray, 208 F.3d at 294. The Mowbray court worried, we think rightly, that the third Blair category might "encourage too many disappointed litigants to file fruitless Rule 23(f) applications" since "a creative lawyer almost always will be able to argue that deciding her case would clarify some 'fundamental' issue." Id. The First Circuit then emphasized that "interlocutory appeals should be the exception, not the rule" because "many (if not most) class certification decisions turn on 'familiar and almost routine issues.'" Id. (citing Comm. Note, Fed. R. Civ. P. 23(f)). As a result, the Mowbray court concluded that "Blair's third category should be restricted to those instances in which an appeal will permit the resolution of an unsettled legal issue that is

important to the particular litigation as well as important in itself and likely to escape effective review if left hanging until the end of the case." Id.

We find both the Blair and Mowbray opinions to be cogent explications of the Rule 23(f) inquiry. We think it important, however, to emphasize some additional considerations that may weigh against frequent interlocutory appellate review of class action certification decisions.

To begin with, there are too many class actions filed each year for federal appeals courts practicably to adjudicate class certification decisions on an interlocutory basis as a matter of course. As a statistical point of reference, we observe that according to the Federal Judicial Center, as of 1998 there were 1,742 active federal cases with class action activity. In 1994, there were only 816 such cases. A similar rise is reported for this Circuit; in 1998, according to the data, there were 221 active cases in this Circuit with class action activity, almost double the number of such cases, 114, during 1994.[7] Given these numbers, and the large volume of ordinary final judgments that by law must be considered by the courts of appeals, routinely granting interlocutory appellate review of class certification decisions is simply not practicable.

---

[7]These figures are not published in printed form, but are derived from information in the databases of the Federal Judicial Center in Washington, D.C.

16

There are also powerful case management concerns that caution against routinely granting appellate review in these circumstances. Class certification orders also are not final judgments impervious to lower court review and revision. On the contrary, Rule 23(c)(1) specifically empowers district courts to alter or amend class certification orders at <u>any</u> time prior to a decision on the merits. That power is critical, because the scope and contour of a class may change radically as discovery progresses and more information is gathered about the nature of the putative class members' claims.[8] Indeed, Rule 23 contemplates that the class certification decision will be made prior to the close of discovery. Fed. R. Civ. P. 23(c)(1) (class status should be resolved "[a]s soon as practicable after the commencement of" the action); <u>see also</u> <u>Armstrong v. Martin Marietta Corp.</u>, 138 F.3d 1374, 1389 (11th Cir. 1998) (en banc) (citing data showing that most class certification decisions are made in the early stages of the litigation). Rule 23(f) should not be a vehicle for courts of appeals to micro-manage complex class action litigation as it unfolds in the district court.

Moreover, interlocutory appellate review of a class certification decision may short-circuit the district court's ability -- or at least willingness -- to exercise

---

[8]Rule 23(f) states expressly that an appeal under this provision does not stay proceedings in the district court unless the district court or the court of appeals so orders. Thus, Rule 23(f) contemplates that in most cases discovery (at the very least, merits discovery) will continue notwithstanding the pendency of an appeal of the class certification order.

its power to reconsider its certification decision. If a decision on class certification has been fully reviewed and affirmed on an interlocutory basis, both the parties and the district judge may feel constrained from revisiting the issue and thereby potentially triggering a new round of appellate proceedings with the inevitable delay and effort of such proceedings. This possibility is troubling, because class certification determinations are so fluid and fact-sensitive that district courts should be encouraged rather than discouraged from reassessing whether the prerequisites of Rule 23 exist and whether a class action is the most efficacious way to resolve the dispute. Quite simply, "[w]e should err, if at all, on the side of allowing the district court an opportunity to fine-tune its class certification order rather than opening the door too widely to interlocutory appellate review." Mowbray, 208 F.3d at 294 (citing Fed. R. Civ. P. 23(c)(1)) (internal citation omitted).

Finally, authorizing interlocutory review simply on the basis of a so-called "fundamental" or "unsettled" question of law sets a difficult precedent. We share the First Circuit's concern over encouraging a flood of Rule 23(f) petitions claiming that such a question is in dispute. Given the stakes of class action litigation, and the vast number of persons affected, many routine issues have the potential to take on substantial proportions and assume an importance they

otherwise might not. Moreover, given the highly particularized nature of class action determinations, and the lack of case law applying Rule 23 in many contexts, we imagine it relatively easy for a litigant to identify some question of law implicated by the class certification decision and in good faith characterize that question as novel or unsettled. To justify immediate and interlocutory appellate review, something more is necessary -- something that creates a compelling need for resolution of the legal issue sooner rather than later.

Taking into account all of these considerations, the following guideposts may be utilized in determining whether to grant an interlocutory appeal under Rule 23(f).

First, and most important, the court should examine whether the district court's ruling is likely dispositive of the litigation by creating a "death knell" for either plaintiff or defendant. The prospect of irreparable harm from delaying appellate review of the class certification decision until after final judgment undoubtedly creates a compelling need for immediate review. Nevertheless, even ordinary class certification decisions by their very nature may radically reshape a lawsuit and significantly alter the risk-benefit calculation of the parties, leading to claims of irreparable harm. For that reason, the decision to grant interlocutory review based primarily on this factor generally should be limited to those cases

19

where the district court's ruling, as a practical matter, effectively prevents the petitioner from pursuing the litigation. This might be the case where a denial of class status means that the stakes are too low for the named plaintiffs to continue the matter, or where the grant of class status raises the cost and stakes of the litigation so substantially that a rational defendant would feel irresistible pressure to settle. The size of the putative class and any record evidence regarding the financial resources of the parties are relevant to this inquiry. Also relevant, especially when a class has been certified in a mass tort case against a corporate defendant, is the existence and potential impact of related litigation against that defendant. The nature of the remedy sought in the case (and in damages cases, the amount of money potentially recoverable) is likewise relevant to this factor. For example, even a large class seeking declaratory or injunctive relief may create less pressure on a defendant than a class seeking compensatory and punitive damages so substantial that they threaten a defendant's solvency. We anticipate that the number of decisions truly warranting immediate review on this basis alone will be small.

Second, a court should consider whether the petitioner has shown a substantial weakness in the class certification decision, such that the decision likely constitutes an abuse of discretion. Ordinarily, the appropriateness of allowing a

20

Rule 23(f) appeal should turn on more than the outcome of a preliminary debate about the merits of the district court's ruling. Interlocutory review may be appropriate when it promises to spare the parties and the district court the expense and burden of litigating the matter to final judgment only to have it inevitably reversed by this Court on an appeal after final judgment. Such a situation may exist, for example, when the district court expressly applies the incorrect Rule 23 standard or overlooks directly controlling precedent. Cf. Rutstein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1234-35 (11th Cir. 2000) (granting Rule 23(f) petition and reversing order granting class certification where in light of a prior Eleventh Circuit opinion "we do not see how plaintiffs can maintain a class action under Rule 23(b)(3) in the instant case"). In that situation, interlocutory review may be warranted even if none of the other factors supports granting the Rule 23(f) petition.[9] Typically, however, class certification decisions require the application of broad and flexible legal standards to unique and complex sets of facts that do

---

[9]The more the alleged error arises out of a mistake of law (as opposed to an improper application of the law to the facts), the more the case may be susceptible to interlocutory review, simply because such an error is more readily reviewable by this Court and does not require us to base our determination on an evolving factual record that may already have become incomplete. See SunAmerica Corp. v. Sun Life Assur. Co., 77 F.3d 1325, 1333 (11th Cir. 1996) (court necessarily abuses its discretion if it "has applied an incorrect legal standard"); see also Pickett v. Iowa Beef Processors, 209 F.3d 1276, 1279 (11th Cir. 2000) (granting Rule 23(f) petition and applying de novo standard to reverse district court's interpretation of the adequacy-of-representation test of Rule 23(a)(4)).

not fit squarely within prior precedent. Due to the highly fact-sensitive nature of this inquiry, district courts are given wide latitude to decide whether and how to certify a class, and appellate scrutiny of such decisions is limited at any stage. Accordingly, merely demonstrating that the district court's ruling is questionable generally will be insufficient to support a Rule 23(f) petition in the absence of other factors supporting immediate review. See Armstrong, 138 F.3d at 1386 ("class certification decisions are left to the sound discretion of the district court, and in most cases the certification order can be effectively reviewed on appeal after final judgment") (internal citation omitted).[10]

Third, a court should consider whether the appeal will permit the resolution of an unsettled legal issue that is "important to the particular litigation as well as important in itself." Mowbray, 208 F.3d at 294. Such an issue might be one that is of moment yet is "likely to escape effective review if left hanging until the end of the case." Id. Alternatively, the issue might be one as to which an appellate ruling

_____

[10]We do not mean to suggest that this factor weighs in favor of a Rule 23(f) appeal only when the party seeking interlocutory review meets the extremely demanding test applied to mandamus petitions. See Armstrong, 138 F.3d at 1386 (prior to Rule 23(f) court would issue writ of mandamus to direct district judge to take particular action regarding a class certification ruling only when the "certification order constitutes, at a minimum, a clear abuse of discretion"). Rather, this factor should be viewed as a sliding scale. The stronger the showing of an abuse of discretion, the more this factor weighs in favor of interlocutory review. We note, however, that every litigant seeking to appeal under Rule 23(f) necessarily believes that the district court has abused its discretion. Accordingly, simply alleging an abuse of discretion may not in and of itself justify an interlocutory appeal.

sooner rather than later will substantially assist the bench and bar, as may be the case when an issue is arising simultaneously in related actions involving the same or similarly-situated parties or is one that seems likely to arise repeatedly in the future. The fact that the lawsuit involves a governmental entity, or has a strong public interest component, may also lend the issue particular importance and urgency. Moreover, interlocutory review under Rule 23(f) seems more appropriate if the unsettled issue relates specifically to the requirements of Rule 23 or the mechanics of certifying a class, given that one of the primary justifications for Rule 23(f) was a concern over the perceived lack of a substantial body of case law addressing the Rule 23 standards. See Blair, 181 F.3d at 835. We reiterate, however, that a class certification decision which "turns on case-specific matters of fact and district court discretion," Comm. Note, Fed. R. Civ. P. 23 -- as most certification decisions indisputably do -- generally will not be appropriate for interlocutory review.

Fourth, a court should consider the nature and status of the litigation before the district court. Some cases plainly will be in a better pre-trial posture for interlocutory appellate review than others. As noted above, the propriety of granting or denying a class, as well as the proper scope of any class that has been granted, may change significantly as new facts are uncovered through discovery.

Similarly, a limited or insufficient record may adversely affect the appellate court's ability to evaluate fully and fairly the class certification decision. Moreover, a district court's ruling on dispositive motions or a motion to add new class representatives, parties, or claims may significantly redefine the issues in the case and thereby affect the scope of or need for a class. Accordingly, the decision on a Rule 23(f) petition may take into account such considerations as the status of discovery, the pendency of relevant motions, and the length of time the matter already has been pending. In certain circumstances the court may also consider the current impact on the parties of rulings by the district court that, while not themselves subject to Rule 23(f) review, nevertheless are inextricably tied to the class certification decision. Cf. Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1007-08 (11th Cir. 1997) (reviewing petitions for writ of mandamus that challenged class certification decision as well as district court's order allowing highly prejudicial advertising and mass mailings to putative class members), reh'g denied, 167 F.3d 542 (1998).

Finally, a court should consider the likelihood that future events may make immediate appellate review more or less appropriate. Simply by way of example, settlement negotiations involving some or all of the parties affected by the decision, or the prospect of an imminent change in the financial status of a party

(such as a bankruptcy filing) may caution against hearing an interlocutory appeal. Conversely, if the case is likely to be one of a series of related actions raising substantially the same issues and involving substantially the same parties, then early resolution of a dispute about the propriety of certifying a class may facilitate the disposition of future claims. Also significant is whether the district court itself has indicated that it views its class certification decision as conditional or subject to revision at a later stage in the case.

We do not create any bright-line rules or rigid categories for accepting or denying Rule 23(f) petitions today. Our authority to accept Rule 23(f) petitions is highly discretionary, and the foregoing list of factors is not intended to be exhaustive; there may well be special circumstances that lead us to grant or deny a Rule 23(f) petition even where some or all of the relevant factors point to a different result. Moreover, none of the foregoing factors is necessarily conclusive; ordinarily, each relevant factor should be balanced against the others, taking into account any unique facts and circumstances.

We reiterate, however, that interlocutory appeals are inherently "disruptive, time-consuming, and expensive," Mowbray, 208 F.3d at 294, and consequently are generally disfavored. Piecemeal appellate review has a deleterious effect on judicial administration. It increases the workload of the appellate courts, to the

25

detriment of litigants and judges. It requires the appellate courts to consider issues that may be rendered moot if the appealing party ultimately prevails in or settles the case. It undermines the district court's ability to manage the action. And it creates opportunities for abuse by litigants seeking to delay resolution of a case by raising with the appellate court objections to the scope of an order that should have been raised first with the district court itself. Most of these concerns are, if anything, even more compelling in the class action context, especially given the district court's broad authority under Rule 23(c)(1) to monitor and if necessary reconsider its class certification decision as discovery unfolds and the action progresses to trial.

We will therefore use restraint in accepting Rule 23(f) petitions, and these interlocutory petitions will not be accepted as a matter of course.

B.

Turning to the particulars of this case, we acknowledge that this lawsuit may not raise the kind of issues that ordinarily might warrant granting a Rule 23(f) petition. First, we do not believe the grant of class status here raises the stakes of litigation so substantially that the Defendants likely will feel irresistible pressure to settle. The certified Plaintiff class, while large, is only seeking declaratory and injunctive relief (not money damages). As a result, the size of the certified class, in

26

this particular case, does not place tremendous economic pressure on Defendants. And while an award of injunctive and declaratory relief would exert a significant impact on the administration of the state HCBW program, Defendants' interlocutory appeal does not concern the scope of this potential relief.

Second, while we agree with Defendants that the district court would have been wiser to certify several subclasses rather than one large class, see infra Part III, Defendants do not demonstrate any substantial weakness or profound error of law in the class certification decision. Though in passing Defendants challenge the class certification language as vague, they do not argue that a HCBW class should not have been certified; indeed, they propose that the district court should have certified two HCBW classes. Consequently, because both parties agree that some kind of HCBW class(es) should be certified in this case, the issues raised on appeal are not dispositive of the litigation.[11] Moreover, much of the vagueness of the

---

[11]In their brief, Defendants argue that the district court should have certified the following two HCBW classes:

> Class One. All persons with developmental disabilities who have applied for services which are compensable under the Florida Home and Community Based Waiver and who have been determined to be eligible for services but who have not received them with reasonable promptness.

> Class Two. All persons with developmental disabilities who have applied for services compensable under the Florida Home and Community Based Waiver but who have been denied them without notice and opportunity for hearing.

district court's order relates to its inclusion of persons who will be eligible for or will receive HCBW services in the future; while such language would have serious implications in a class action seeking monetary damages, it is of little moment in this case because the certified class only seeks declaratory and injunctive relief.[12]

Defendants' objection that Plaintiffs have not as yet demonstrated that a named class representative possesses individual or associational standing to bring each of the class's subclaims is of greater moment. But although we agree that at least one named representative must have standing to bring each class subclaim, see infra Part III, this argument should have been raised squarely with the district court rather than for the first time in a Rule 23(f) petition.[13] Outside the Rule 23(f) context, issues of standing are normally not available for review on interlocutory appeal. See Summit Medical Assocs. v. Pryor, 180 F.3d 1326, 1334 (11th Cir. 1999).

[12]We agree with Defendants that the class certification order does not offer a precise definition of what it means to be "eligible" for HCBW services. However, whether the term includes those who have applied for HCBW services or rather all people residing in Florida who meet the ICF/DD level-of-care criteria only really affects the size of the class. Because money damages are not sought by this class, such a definitional problem is less significant at this time.

[13]In their motion to dismiss, Defendants did raise a standing-related issue; however, they did not contest the individual standing of the named plaintiffs to raise their proposed class claims. Instead, Defendants merely argued that Plaintiffs had not demonstrated that they were likely to suffer injury at the hands of the named Defendants because the state officials named, for example, then-Governor Lawton Chiles, lacked official responsibility over the state Medicaid program.

Extensive interlocutory review of Defendants' standing objection seems particularly inappropriate given the circumstances of this case. First, the factual record is not fully developed -- making resolution of individual standing claims impossible. Second, even if Defendants' argument were completely correct, at worst several new named representatives would have to be added to the class or several of the class subclaims would have to be amended or dropped. Simply put, Defendants' standing argument does not end the case; and given the fluid nature of class certification rulings and the ability of the district court to alter or amend the certified class at any point prior to a ruling on the merits, see Fed. R. Civ. P. 23(c)(1), we believe such standing challenges are best raised initially with the district court rather than as the predicate for an appeal under Rule 23(f).

Other Rule 23(f) factors might also weigh against interlocutory review were this an ordinary case. We see no truly novel or fundamental issue of law raised by the class certification decision. As discussed above, the scope and nature of this class may be affected by matters still subject to discovery and fact development. On the other hand, this lawsuit has tremendous importance to thousands of developmentally-disabled persons in the State of Florida, many of whom have a critical need for prompt delivery of the services and benefits they claim to have been denied by the State. There is also a broader but no less compelling public

29

interest in determining promptly the scope of the State's administrative and financial obligations under the Medicaid program with respect to such persons. Given these considerations, as well as the fact that we have not previously enunciated Rule 23(f) standards and the merits of this appeal have already been briefed and oral argument heard, we proceed to address certain aspects of the class certification ruling -- particularly with respect to the creation of subclasses and typicality review.

III.

We review orders granting class certification for abuse of discretion. See Kendrick v. Jefferson County Bd. of Educ., 932 F.2d 910, 914 (11th Cir. 1991) (citing Walker v. Jim Dandy Co., 747 F.2d 1360, 1363 (11th Cir.1984)). Fed. R. Civ. P. 23(a) requires, as a condition precedent to class certification, that four prerequisites be met. The Rule states:

> (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Id. These four requirements commonly are referred to as the prerequisites of numerosity, commonality, typicality, and adequacy of representation, see General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 156, 102 S. Ct. 2364, 2370, 72 L. Ed. 2d 740 (1982); Appleyard v. Wallace, 754 F.2d 955, 958 (11th Cir. 1985), and they are designed to effectively limit class claims to those "'fairly encompassed'" by the named plaintiffs' individual claims, Falcon, 457 U.S. at 156, 102 S. Ct. at 2370 (citation omitted). In this case, Defendants argue that the certified class does not satisfy the commonality and typicality requirements because there are several classwide legal claims for which no named plaintiff possesses Article III standing.

In many ways, the commonality and typicality requirements of Rule 23(a) overlap. Both requirements focus on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification. See Washington v. Brown & Williamson Tobacco Co., 959 F.2d 1566, 1569 n.8 (11th Cir. 1992) (citing Falcon, 457 U.S. at 157 n.13, 102 S. Ct. at 2370 n.13); Appleyard, 754 F.2d at 958 (citing De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225 (7th Cir.1983)); see also 7 C. Wright & A. Miller, Federal Practice and Procedure § 1764 (1972). Traditionally, commonality refers to the group characteristics of the class as a whole and

31

typicality refers to the individual characteristics of the named plaintiff in relation to the class. See Baby Neal v. Casey, 43 F.3d 48, 56 (3rd Cir. 1994). These requirements "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Falcon, 457 U.S. at 157 n.13.[14]

It should be obvious that there cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class. As noted above, typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large. Without individual standing to raise a legal claim, a named

_____

[14]Neither of these requirements requires that "all putative class members share identical claims." Baby Neal, 43 F.3d at 56. Previously, we have explained that these requirements may be satisfied even if some factual differences exist between the claims of the named representatives and the claims of the class at large. See Appleyard, 754 F.2d at 958 ("'[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members'") (quoting De La Fuente, 713 F.2d at 232). However, we do require that the named representatives' claims share "'the same essential characteristics as the claims of the class at large.'" Appleyard, 754 F.2d at 958 (quoting De La Fuente, 713 F.2d at 232) (emphasis added). In making this determination, we have concluded that "a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences." Appleyard, 754 F.2d at 958; see also Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984) (stating that "a sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory").

32

representative does not have the requisite typicality to raise the same claim on behalf of a class.

As the Supreme Court has explained, "[w]e have repeatedly held that a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Falcon, 457 U.S. at 156, 102 S. Ct. at 2370 (citing East Texas Motor Freight Sys. v. Rodriguez, 431 U.S. 395, 403, 97 S. Ct. 1891, 1896, 52 L. Ed. 2d 453 (1977)) (internal quotation marks omitted); see also Blum v. Yaretsky, 457 U.S. 991, 999, 102 S. Ct. 2777, 2783, 73 L. Ed. 2d 534 (1982) (explaining that "[i]t is not enough that the conduct of which the plaintiff complains will injure someone. The complaining party must also show that he is within the class of persons who will be concretely affected. Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject."). This rule makes especially good sense when we consider that one of the core purposes of conducting typicality review is to ensure that "the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." Baby Neal, 43 F.3d at 57; see also 1 Newberg & Conte, Newberg on Class Actions, § 3.13 (3d ed. 1992).

Thus, it is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim. "[A]ny analysis of class certification must begin with the issue of standing." Griffin v. Dugger, 823 F.2d 1476, 1482 (11th Cir. 1987); see also Brown v. Sibley, 650 F.2d 760, 771 (5th Cir. Unit A, July 1981) (stating that the "constitutional threshold [of standing] must be met before any consideration of the typicality of claims or commonality of issues required for procedural reasons by Fed. R. Civ. P. 23"). "Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others." Griffin, 823 F.2d at 1482. It is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to one of many claims he wishes to assert. Rather, "each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." Id. at 1483.

In this case, Defendants offer a very narrow argument. As discussed earlier, they do not contend that a HCBW class should not be certified -- in fact they

propose two HCBW classes that they believe warrant certification. Defendants likewise do not argue that none of the named plaintiffs has standing to bring any HCBW class claims -- rather, in their briefs and at oral argument, Defendants concede that two named plaintiffs, Daniel Lavin and Daniel Shell, do have individual standing to bring three of the ten identified class claims.[15] Defendants merely assert that prior to class certification Plaintiffs made no showing that any named plaintiff had individual standing to bring the other seven identified class claims. See supra, Part I.

Having studied the record, it is clear that there are a number of individual standing challenges that cannot be resolved adequately on appeal. For example, Defendants contend that a number of the named plaintiffs have not demonstrated that they are eligible for HCBW services. As best we can tell from the record before us, an HCBW applicant is considered eligible by Defendants if she (1) is a

---

[15]Specifically, Defendants admit that Lavin and Shell are appropriate class representatives for the following three claims:

> 1. Failure to provide notice and opportunity for a hearing of the denial, reduction, or termination of waiver benefits in violation of the Due Process Clause.
>
> 2. Failure to provide adequate and appropriate waiver services in violation of 42 U.S.C. § 1396n.
>
> 3. Failure to provide waiver services with reasonable promptness in violation of 42 U.S.C. 1396a.

client of developmental services, (2) meets the level-of-care criteria for admission to an ICF/DD, and (3) elects waiver services in lieu of institutionalized care at an ICF/DD. This inquiry is necessarily fact-specific and requires factual proffers, through affidavits and other evidentiary documents, that have not been developed sufficiently as of now.[16] We therefore remand this case to the district court and direct it to ensure that at least one named representative of each class or subclass has standing for each proffered class or subclass claim.

We observe as well that the class, as presently defined, appears to be composed of too many subgroups with disparate legal claims to warrant certification. As it now stands, the class consists of "all persons with developmental disabilities who are presently receiving Home and Community-Based Waiver Services or who are eligible to receive Home and Community-Based Waiver Services, or who would receive or be eligible for Home and Community-

---

[16]To highlight the fluid and undeveloped state of the record, we note that Plaintiffs recently have filed a motion with our court, well after oral argument was heard, to supplement the record with unauthenticated documents not previously reviewed by the district court. These documents allegedly demonstrate that many of the named representatives, whom Defendants challenge as lacking standing, actually have been deemed eligible by Defendants for HCBW services. Given the late date of this submission and the fact that they have not been authenticated or reviewed by the district court, we decline to consider these materials on appeal. We wish to emphasize, however, that the district court should consider the admissibility of this new evidence on remand -- particularly as it impacts the standing inquiry.

Based Waiver Services in the future." The overbreadth of this class is made plain by a brief consideration of the class's subclaims.

While the class ostensibly is comprised of developmentally-disabled persons who meet Medicaid eligibility requirements for ICF/DD care, there are sharp differences amongst class subgroups in the type of conduct challenged and the type of injury suffered. Broadly speaking, Plaintiffs allege both substantive and procedural injuries: first, they allege that Defendants provided inadequate and inappropriate HCBW services or denied outright HCBW services to eligible persons who meet the ICF/DD level-of-care requirements due to funding rather than medical necessity concerns; second, they allege that Defendants failed to provide HCBW services with reasonable promptness to eligible individuals; and finally, they allege that Defendants unlawfully failed to provide HCBW applicants with the requisite procedural safeguards including reasonably prompt claims decisions and notice of an applicant's right to appeal a claims denial.

We believe these alleged injuries may be better addressed through several subclasses rather than one large class. It appears that there are three general subclasses of HCBW applicants whose interests are affected by this suit. First, there are those individuals who have applied for HCBW services and been approved by Defendants for HCBW services, but who challenge their approved

37

services as inadequate, inappropriate, or untimely provided (in the case of those applicants who are approved for a waiver but are placed on indefinite waiting lists). Second, there are those persons who have applied for HCBW services but who have been denied such services without notice and opportunity for hearing. Finally, there are those individuals who have applied for HCBW services and still await an adjudication of their HCBW applications.

While the alleged injuries of these subclasses may overlap to some degree, there are obvious and important differences, for example, between the injury claim of an applicant who already has been approved but has not received HCBW services, and an applicant who has been ruled ineligible or who still awaits an eligibility ruling for HCBW services. Notably, each group targets a different "bad act" of Defendants whether it be a failure to provide approved services in a reasonably prompt manner, a claims denial, or a failure to adjudicate a claims application in a reasonably prompt manner. Because these injury claims target different defendant conduct, the type of proof required for each claim necessarily will differ.

In addition, proof of these alleged injuries also requires a threshold showing of eligibility for HCBW services. As noted above, it appears that an HCBW applicant is considered eligible by Defendants if she (1) is a client of

developmental services, (2) meets the level-of-care- criteria for admission to an

ICF/DD, and (3) elects waiver services in lieu of institutionalized care at an

ICF/DD.  Not all members of the certified class have been ruled eligible for

HCBW services by Defendants, however.  While some class members have been

adjudged eligible, other class members still await an eligibility determination.  One

advantage then of dividing the existing class into subclasses reflecting class

members' HCBW applicant status is that each member of a subclass will occupy a

similar eligibility status -- that is, either approved, denied, or pending adjudication.

For these reasons, it may be prudent to certify three HCBW subclasses, on

the basis of HCBW applicant status.   One possible approach would be the

following three subclasses:

> Class One.  All persons with developmental disabilities
> who have applied for services which are compensable
> under the Florida Home and Community Based Waiver
> and who have been determined to be eligible for services
> but who have not received them with reasonable
> promptness or have received inadequate or inappropriate
> services.
>
> Class Two.  All persons with developmental disabilities
> who have applied for services compensable under the
> Florida Home and Community Based Waiver but who
> have been adjudged ineligible and/or denied services
> without notice and opportunity for hearing.
>
> Class Three.  All persons with developmental disabilities
> who have applied for services compensable under the

> Florida Home and Community Based Waiver and have
> not received a reasonably prompt claims determination.

All that said, given the slenderness of the factual record before us, we must leave the ultimate decision as to what kinds of appropriate subclasses to create to the sound discretion of the district court. We also note that Plaintiffs' suit contains several additional fact-specific claims which, after further factual inquiry, may be better litigated through additional subclasses rather than through subclasses based simply on HCBW applicant status. For example, Plaintiffs' suit now includes a claim that Medicaid-eligible, developmentally-disabled children under the age of 21 have been denied EPSDT services by Defendants. A separate EPSDT subclass may be appropriate if after further factual development it becomes clear that Defendants' alleged EPSDT policy is sufficiently different from its HCBW policy. In fashioning appropriate subclasses, the district court also should be careful not to certify subclasses overlapping with certified classes in other related ICF/DD litigation now pending.[17]

---

[17] There are four other related ICF/DD cases in various stages before the district court. The most similar of these cases is Murray v. Bock, District Court No. 98-1066-CIV- FERGUSON, Appeal No. 99-10789. On March 10, 1999, the district court entered a Memorandum Order stating that a class certification order would be entered and that the order would certify a class of "all developmentally disabled individuals participating in the Home and Community-Based Waiver who are not receiving or who have not received some services under the Waiver for which they are eligible." The district court has not yet entered a class certification order. Obviously, this proposed class would overlap with the subclasses we have outlined above.

In short, having accepted the Defendants' petition for appeal under Rule 23(f), we agree with the Defendants that the single class certified by the district court does not comply with the requirements of Rule 23(a). Plaintiffs have not demonstrated that the claims of the named class representatives possess the requisite typicality with the claims of the class at large, or that the named class

---

We believe the other three cases involve distinct ICF/DD claims. In <u>Does v. Chiles</u>, District Court No. 92-589-CIV-FERGUSON, Appeal Nos. 96-5144 and 99-14590, Plaintiffs have moved for certification of a class of "all developmentally disabled individuals in the State of Florida who are entitled to Intermediate Care Facilities for the Mentally Retarded ("ICF/MR") placement but have not received a placement with reasonable promptness." The magistrate judge has recommended certification of this class but the district court has not yet entered its order.

In <u>Cramer v. Bush</u>, District Court No. 96-6619-CIV-FERGUSON, Appeal No. 98-5876, the district court on March 25, 1998 certified a class of "all individuals who are Medicaid recipients who resided in private ICF/DDs in Florida as of June 30, 1997, and/or who currently reside in private ICF/DDs."

Finally, in <u>Brown v. Bush</u>, District Court No. 98-673-CIV-FERGUSON, Appeal No. 99-11544, the district court on March 31, 1999 certified a class of "all individuals who on or after January 1, 1998 have resided, are residing or will reside at the DSIs, including all persons who have been transferred from DSIs to other settings, such as intermediate care facilities, group homes or skilled nursing facilities but remain defendants' responsibility, and all persons at risk of being sent to DSIs." On appeal, we vacated the district court's order and remanded with instructions that the district court certify the following class:

> All individuals with developmental disabilities who were residing in a Florida DSI as of March 25, 1998, and/or are currently residing in a Florida DSI, who are Medicaid eligible and presently receiving Medicaid benefits, who have properly and formally requested a community-based placement, and who have been recommended by a State-qualified treatment . . . team for a less restrictive placement that would be medically and otherwise appropriate, given each individual's particular needs and circumstances.

representatives possess standing to raise all of the class's claims.  On remand, the district court must ensure that at least <u>one</u> of the named class representatives possesses the requisite individual or associational standing to bring each of the class's legal claims.  Moreover, the wisest course may be to divide this single class into subclasses according to class members' HCBW application status <u>provided</u> that a named representative possesses individual or associational standing for each proffered subclaim.  We therefore vacate the class certification order and remand for further proceedings not inconsistent with this opinion.

VACATED AND REMANDED.