Amy Totenberg, United States District Judge
This putative class action concerns an alleged design defect in the heating, ventilation, and air conditioning systems ("HVAC Systems") in several vehicles manufactured and sold by Defendants Mercedes-Benz USA, LLC ("Mercedes") and Daimler AG ("Class Vehicles").[1] The matter is before the Court on Defendant Mercedes' Motion to Dismiss Plaintiffs' Complaint [Doc. 17]. For the following reasons, the Court GRANTS in part and DENIES in part Mercedes' Motion.[2]
I. BACKGROUND[3]
Plaintiff Amin bought a Class Vehicle in November, 2012. (Compl., Doc. 1 ¶ 14.) He "first experienced a noxious odor caused by the HVAC System in approximately January of 2014." (Id. ¶ 18.) Plaintiff Patel bought a Class Vehicle in January, 2015. (Id. ¶ 23.) He "first experienced a noxious, pungent, sour, musty odor caused by the HVAC System in approximately March or April 2015." (Id. ¶ 28.)
Plaintiffs allege that "because of the HVAC System Defect, the HVAC Systems in the Class Vehicles are predisposed to produce a moldy odor under normal use conditions that would not cause non-defective HVAC systems to produce a moldy odor ...." (Id. ¶ 61.) More specifically, Plaintiffs allege that the design of the HVAC System is such that moisture does not evaporate properly from the system via the evaporator. (Id. ¶ 64.) Because the moisture does not evaporate, "[t]he residual moisture provides a haven for the growth of mold and mildew as spores enter the system through outside vents." (Id. ) Plaintiffs allege that several mold species are present in the vehicle because of the defect. (Id. ¶ 65.) These species are "known to secrete mycotoxins ...." (Id. )
*1282 According to Plaintiffs, the defect in the HVAC Systems of the Class Vehicles is one of design, such that even with regular treatment, the mold and accompanying odor will continue to reappear. (Id. ¶¶ 77-79, 82-83.) The near-certain reoccurrence of the condensation, mold, and foul odor requires that Plaintiffs and other putative class members undergo periodic, "costly maintenance" to temporarily ameliorate the effects of the defect. (See , e.g. , id. ¶¶ 17, 27, 118, 119e.)
Plaintiffs allege that Mercedes knew about the defect before selling the Class Vehicles. (Id. ¶¶ 72-102.) They offer several different reasons that Mercedes knew or should have known about the defect, including (1) a consumer arbitration panel decision in 2008 regarding the same alleged defect; (2) Mercedes' own technical bulletins discussing the defect as early as 2007; (3) Mercedes' own system repair data from the owners of Class Vehicles; (4) a correspondingly large number of replacement parts ordered to address the problem; (5) complaints made directly to Mercedes from putative class members; (6) complaints about the defect collected by NHTSA's Office of Defect Investigations; and (7) public complaints made by consumers in online forums. (Id. ) Plaintiffs further allege that Mercedes "knowingly manufactured and sold the Class Vehicles with the HVAC System Defect, while willfully concealing the true inferior quality and sub-standard performance of the Class Vehicles' HVAC Systems." (Id. ¶ 107.) Mercedes knew of the defect in the Class Vehicles and failed to notify putative class members and other potential purchasers before they made a purchase. (Id. ¶ 110.)
In particular, Mercedes advertised the HVAC Systems in the Class Vehicles as having HVAC Systems that clean air in the cabin (i.e., filtering " 'dust and pollen as small as 0.0002' from the air") and providing "individualized comfort in any season." (Id. ¶ 112.) Mercedes also stated in advertising that Certified Pre-Owned (CPO) vehicles have received a rigorous inspection which extends to the HVAC Systems. (Id. ¶ 114.) Mercedes further advertised that before a CPO vehicle is sold, " '[a]ny deficiencies' " to its HVAC System are " 'repaired, replaced or reconditioned.' "
Plaintiffs allege that Mercedes "actively concealed" the defect in a number of ways. (Id. ¶ 119.) Mercedes "forced Class Members to bear the cost of temporary measures to address the moldy smells," but also reduced the price for vocal complainants. (Id. ¶ 119e.) When consumers brought their Class Vehicles in for service due to the defect, Mercedes treated the car with "temporary measures ... while leaving the HVAC Systems as they were." (Id. ¶ 119f.) In this way, the HVAC Systems were "never permanently corrected" and thus, Mercedes did "not prevent the recurrence" of the formation of mold. (Id. ¶¶ 119f-g.) Rather than disclose the defect when confronted by complaints of the smell, Mercedes blamed the putative class members for the smells. (Id. ¶ 122C.)
Plaintiffs "previously filed a class action complaint in the Central District of California on May 9, 2016" in which they made substantially similar allegations. (Id. ¶ 128.) See Manan Bhatt, et al. v. Mercedes-Benz USA, LLC , No. 2:16-cv-03171-TJH-RAO (C.D Cal.). Plaintiffs were dismissed without prejudice for misjoinder on March 9, 2017. Id. They filed their Complaint in this action in May 2017. (See Compl.) Plaintiffs assert the following claims in the Complaint: (1) breach of express warranty; (2) breach of express warranty under the Magnuson-Moss Act; (3) breach of implied warranty; (4) breach of implied warranty under the Magnuson-Moss Act; (5) violations of the Georgia Fair Business Practices Act, *1283 O.C.G.A. § 10-1-390, et seq. ; (6) violations of Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370, et seq. ; (7) breach of implied warranty of merchatability, O.C.G.A. § 11-2-314 ; (8) fraud by concealment; and (9) unjust enrichment. (Compl., Doc. 1 ¶¶ 141-254.) Thereafter, Mercedes moved to dismiss all claims. (Motion to Dismiss, Doc. 17.)
II. LEGAL STANDARD
A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. Bell Atlantic v. Twombly , 550 U.S. 544, 555-556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ; Fed. R. Civ. P. 12(b)(6). The plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Erickson v. Pardus , 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citing Bell Atlantic v. Twombly , 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ); Fed. R. Civ. P. 8(a). In ruling on a motion to dismiss, the court must accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. See Hill v. White , 321 F.3d 1334, 1335 (11th Cir. 2003).
A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A plaintiff is not required to provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly , 550 U.S. at 555, 127 S.Ct. 1955. The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. Id. at 556, 127 S.Ct. 1955. A complaint may survive a motion to dismiss for failure to state a claim even if it is "improbable" that a plaintiff would be able to prove those facts and even if the possibility of recovery is extremely "remote and unlikely." Id.
III. DISCUSSION
a. Plaintiffs' Standing as to Absent Class Members
Mercedes challenges Plaintiffs' standing to represent absent class members as to models of the Class Vehicles they did not purchase. (Doc. 17-1 at 5-6.) "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Prado-Steiman ex rel. Prado v. Bush , 221 F.3d 1266, 1279 (11th Cir. 2000) (quoting Gen. Tel. Co. of Sw. v. Falcon , 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) ). "Thus, it is well-settled that ... the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." Prado-Steiman , 221 F.3d at 1279.
As pointed out by some of Mercedes' cited authority, there is disagreement among federal courts about when courts should analyze the standing of named plaintiffs as to the claims of absent class members. See , e.g. , Toback v. GNC Holdings, Inc. , No. 13-80526-CIV, 2013 WL 5206103, at *4-5 (S.D. Fla. Sept. 13, 2013) (collecting cases). Compare Pearson v. Target Corp. , No. 11 CV 7972, 2012 WL 7761986, at *1 (N.D. Ill. Nov. 9, 2012) (addressing standing of named plaintiffs as to claims of absent class members at the motion to dismiss stage); with McCabe v. Daimler AG , 948 F.Supp.2d 1347, 1374 (N.D. Ga. 2013) (Batten, J.) (denying defendant's pre-certification motion to strike class allegations because motion was "premature").
*1284 See also , e.g. , 1 William B. Rubenstein, Newberg on Class Actions § 2:6 (5th ed. 2017) (discussing "competing approaches" among federal courts in dealing with pre-certification challenges to standing of named plaintiffs).
However, this Court declines to prematurely address arguments more appropriate in the Rule 23 context. See , e.g. , 7AA Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1785.1 (3d ed. 2017) ("Representative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation."). This is in line with previous rulings in this District. See McCabe , 948 F.Supp.2d at 1374. As in McCabe , here,
[t]here is no good reason for this case not to proceed down the normal path, i.e., with the Court setting a deadline for Plaintiff to file a motion for class certification and the parties to litigate the propriety of maintaining the action as a class under the traditional Rule 23(c) rubric.
Id. (quoting Korman v. Walking Co. , 503 F.Supp.2d 755, 763 (E.D. Pa. 2007) ). As Plaintiffs have alleged an adequate threshold factual basis for their standing, Mercedes arguments are more appropriate for the Rule 23 context and that is when the Court will address them.
Mercedes' arguments about Prado-Steiman are misplaced. Prado-Steiman's basic holding was that "at least one named representative of each class or subclass [must have] standing for each proffered class or subclass claim." 221 F.3d at 1280. Thus, what really matters at this stage are claims , whether or not they involve more than one particular model of a product. Although it is true that Plaintiffs have alleged that several different models of Mercedes-Benz vehicles have this defect, they have also alleged that these defects are the same or substantially the same across vehicle models. (See Compl. ¶ 1.) In a real sense, the "product" at issue in this case is a faulty HVAC System, which Plaintiffs have alleged is the same across all Class Vehicles. (See Compl. ¶ 1 (describing the HVAC System as "uniform and uniformly defective").) Unlike in Prado-Steiman , where there were "sharp differences amongst class subgroups in the type of conduct challenged and the type of injury suffered," 221 F.3d at 1281, here, the alleged defect is uniform. (See Compl. ¶ 1.) Similarly, in Carter v. Forjas Taurus, S.A. the court approved a settlement in a putative class action brought against a gun manufacturer by a sheriff's deputy. 701 Fed. Appx. 759, 765 (11th Cir. 2017). The class-representative deputy sheriff had bought only a single model of the nine models of guns at issue but the court found that he had standing as to the other models. Id. at 765. The court wrote:
[The class representative] alleged he owned a class gun that suffered from the same defects as the rest of the class guns. Thus, [the class representative] suffers from the same alleged injury as the rest of the class.
Id. (emphasis added) (citing Prado-Steiman , 221 F.3d at 1279 ). The Court has construed the complaint allegations here in the light most favorable to Plaintiffs, as it must on a motion to dismiss. Plaintiffs' factual allegations are sufficient to articulate Plaintiffs' individual standing in connection with their claims regarding a variety of the Mercedez-Benz models because the HVAC systems in these models are allegedly substantially identical or identical. Thus, even if Plaintiffs did not purchase each of the Mercedez-Benz car models themselves, the HVAC systems in the identified models they did purchase "suffered *1285 from the same defects as the rest of the" models, assuming the allegations are true.[4] Id. Mercedes' motion to dismiss Plaintiffs claims with respect to Class Vehicles they did not purchase is therefore DENIED.
b. Plaintiffs' Express Warranty Claims
Mercedes argues that Plaintiffs' claim for breach of express warranty fails because they have not pled facts showing that Mercedes failed to comply with its warranty. (Doc. 17-1 at 8.) "An express warranty is a contract," Atlanta Tallow Co. v. John W. Eshelman & Sons, Inc. , 110 Ga.App. 737, 140 S.E.2d 118, 127 (1964), and "[t]he construction of a contract is a matter of law for the court," O.C.G.A. § 13-2-1. "Where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties." UniFund Fin. Corp. v. Donaghue , 288 Ga.App. 81, 653 S.E.2d 513, 515 (2007).
Mercedes argues that Plaintiffs' breach of express warranty claims must fail because the warranty "only provides coverage to correct defects in material or workmanship. " (Doc. 17-1 at 8) (citing Compl., Doc. 1 ¶ 103) (emphasis in original). The relevant portion of the warranty is entitled "Limited Warranty" and reads:
Items Which Are Covered:
DEFECTS: Mercedes-Benz USA, LLC (MBUSA) warrants to the original and each subsequent owner of any new Mercedes-Benz vehicle that any authorized Mercedes-Benz Center will make any repairs or replacements necessary, to correct defects in material or workmanship arising during the warranty period.
("Warranty," Doc. 1-2 at 14.) Mercedes argues that because Plaintiffs have only alleged a defect in design and not in workmanship or material, they have not alleged that Mercedes failed to comply with the terms of its warranty. (Doc. 17-1 at 8-9.)
Plaintiffs argue that despite the language quoted above, warranty in fact covers design defects. (Doc. 18 at 8-10.) The portion of the warranty relevant to their argument reads:
General
Our intention is to repair under warranty, without charge to you, anything that goes wrong with your vehicle during the warranty period which is our fault. All we ask is that you properly maintain and care for the vehicle and that you have warranty repairs performed by an authorized Mercedes-Benz Center.
[...]
Please note the difference between "defects" and "damage" as used in the warranty. Defects are covered since we, the distributor, are responsible. Conversely, we have no control over the damage caused by such things as, but not limited to collision, misuse, and lack of or improper maintenance. Therefore, damage for whatever reason is not covered by the warranty.
[...]
[Mercedes'] obligation is limited to the authorization to exchange or repair at its option such parts which are acknowledged by it to be defective. In case of defective assemblies, factory rebuilt units can be used in exchange instead of their repair. The replaced defective parts or assemblies shall become the *1286 property of [Mercedes]. Warranty repairs do not constitute an extension of the original warranty period for the vehicle or a part thereof.
(Warranty at 19) (emphasis added).
Upon review of the warranty, the Court finds that these two separate portions are in conflict. The earlier portion clearly expresses Mercedes' intent to limit the warranty to defects in "material or workmanship," (Id. at 14), thereby excluding design defects. The later provisions seem to contemplate coverage of "anything that goes wrong with [the vehicle] ... which is [Mercedes'] fault," and in isolation, would certainly cover a design defect of the type alleged by Plaintiffs. (Id. at 19.)
These conflicting provisions "create[ ] an inherent ambiguity within the [warranty]." Emp'rs Mut. Cas. Co. v. Mallard , 309 F.3d 1305, 1309 (11th Cir. 2002), certified question answered sub nom, Shrader v. Emp'rs Mut. Cas. Co. , 907 So.2d 1026 (Ala. 2005). "Where an ambiguity exists in a contract, [the Court attempts] 'to resolve that ambiguity by applying the statutory rules of construction to ascertain the intent of the parties.' " H & E Innovation, LLC v. Shinhan Bank Am., Inc. , 343 Ga.App. 881, 808 S.E.2d 258, 263 (2017) (quoting Willesen v. Ernest Commc'ns , 323 Ga.App. 457, 746 S.E.2d 755 (2013).
Several cannons of construction are relevant to these warranty provisions. First, "[i]f the construction is doubtful, that which goes most strongly against the party ... undertaking the obligation is generally to be preferred." O.C.G.A. § 13-2-2(5). In this case, Mercedes is the party undertaking the obligation through their express warranty, and that fact would favor Plaintiffs' reading of the warranty. However, other principles militate in favor of Mercedes' construction.
"Normally, a contract with inconsistent provisions should be interpreted so that the construction which upholds the contract is preferred." Golden Peanut Co. v. Bass , 275 Ga. 145, 563 S.E.2d 116, 120 (2002) (citations omitted). Further,
[v]iewing the contract as a whole, where there are conflicting provisions, the clause contributing most essentially to the contract is entitled to the greater consideration. A subsidiary provision should be so interpreted as not to be in conflict with what clearly appears to be the 'dominant purpose' of the contract.
Id. at 120 (quoting Joseph Camacho Assoc. v. Millard , 169 Ga.App. 937, 315 S.E.2d 478 (1984) (internal quotations and alterations omitted) ). In this case, the provision limiting the warranty appears earlier in the warranty than the latter, broader provisions. (Warranty at 14, 19.) The limitation also appears to encapsulate more of the 'dominant purpose' of the contract. For example, Mercedes refers to the warranty as the "New Vehicle Limited Warranty." (Warranty at 5.) (See also id. at 11) ("limited warranty"). This suggests that construing the warranty as broadly as Plaintiffs argue would strip it of Mercedes' clear intent to limit its coverage.
Mercedes' reading of the warranty is also supported by examining the relative specificity of the provisions. "In construing contracts, a specific provision will prevail over a general one." Holland v. Holland , 287 Ga. 866, 700 S.E.2d 573, 575 (Ga. Ct. App. 2010) (citations omitted); see also Hearn v. Old Dominion Freight Lines , 172 Ga.App. 658, 324 S.E.2d 517, 518 (1984) ; Griffin v. Barrett , 155 Ga.App. 509, 271 S.E.2d 647 (1980). In this case, Plaintiffs' suggested construction of the warranty relies on general language-"anything that goes wrong"-whereas Mercedes' construction relies on much more specific language-"defect in material or workmanship".
*1287 Plaintiffs' construction of the warranty fails because it would render the earlier limitation clause meaningless. "[Courts] construe a contract in a manner that does not render any of its language meaningless or mere surplusage ...." H & E Innovation, LLC , 808 S.E.2d at 263 (citing Duke Galish, LLC v. Manton , 308 Ga.App. 316, 707 S.E.2d 555 (2011) ). If the Court were to read the warranty as Plaintiffs suggest, the earlier limitation of coverage would be stripped of meaning. Despite an express limitation of coverage to defects in "material or workmanship," the warranty would cover "any" defect-even defects that do not involve "material or workmanship." On the other hand, under Mercedes' construction of the warranty, Plaintiffs' provisions would not become meaningless. Construed in this way, the language highlighted by Plaintiffs would simply mean that Mercedes intends to cover anything that goes wrong with the vehicle insofar as it concerns materials or workmanship. Mercedes' construction, unlike Plaintiffs', avoids rendering a whole provision meaningless.
Finally, "[i]t is a well established rule in the construction of contracts that in the event of such a conflict [between provisions], the first provision prevails." Wilner's, Inc. v. Fine , 153 Ga.App. 591, 266 S.E.2d 278, 280 (1980) (citing West v. Randle , 79 Ga. 28, 3 S.E. 454 (1887) ); see also Coker v. Coker , 265 Ga.App. 720, 595 S.E.2d 556, 557 (2004). In this case, the provision limiting the warranty to coverage of defects "in materials or workmanship" appears earlier in the warranty than those relied upon by Plaintiffs. (Warranty at 14-19.) This canon therefore supports Mercedes' argument.
In light of these canons of construction the meaning of the warranty is not ambiguous. The Court finds that the warranty does not cover design defects. Therefore, Mercedes' Motion to Dismiss Plaintiff's claims for breach of express warranty is GRANTED.
c. Plaintiffs' Implied Warranty Claims
The Court now turns to Plaintiffs' claims of breach of implied warranty. Mercedes argues that Plaintiffs have failed to sufficiently plead a claim for breach of implied warranty because even with the alleged defect, the Class Vehicles are still "fit for the ordinary purposes for which the [they are] used" under O.C.G.A. § 11-2-314(c). Additionally, Defendant argues that Plaintiff Amin's implied warranty claims are time-barred. The Court addresses these arguments in turn.
i. Have Plaintiffs' Sufficiently Pled that the Cars were Unmerchantable?
Under Georgia law, "[u]nless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." O.C.G.A. § 11-2-314(1). "[T]o be merchantable," goods must: "(a) Pass without objection in the trade under the contract description; and ... (c) [be] fit for the ordinary purposes for which such goods are used ...."
The purpose of warranty statutes is that the enterprise which causes losses should lift them from the individual victims and distribute them widely among those who benefit from the activities of the enterprise. This would include strict liability on the part of the manufacturer upon an implied warranty as to defects lurking in any kind of product.
McDonald v. Mazda Motors of Am., Inc. , 269 Ga.App. 62, 603 S.E.2d 456, 460 (2004) (citations omitted) (alterations). Cars are fit for their ordinary purpose of transportation under O.C.G.A. § 11-2-314(1)(a) so long as their "driveability or usefulness" is not affected by the defect alleged. See Horne v. Claude Ray Ford Sales, Inc. , 162 Ga.App. 329, 290 S.E.2d 497, 499 (1982)
*1288 ("There was no evidence of any breach of the implied warranties of merchantability ... [where] the plaintiff admitted that the damage [complained of] had not affected the car's usefulness or its driveability."); Soto v. CarMax Auto Superstores, Inc. , 271 Ga.App. 813, 611 S.E.2d 108, 110 (2005) (used car "with more than 57,000 miles" was merchantable where (1) most alleged defects "were resolved in timely fashion and never rendered the vehicle unusuable"; (2) used cars of that nature passed in trade without objection, and (3) car was "clearly capable of being driven").
Plaintiffs have plausibly alleged facts that, if proven, would show that the defect at issue affects the driveability, safety, and usefulness of their cars. (See , e.g. , Compl., ¶ 3 (alleging that the accumulation of mold and mildew and resulting odor "cause[s] the Vehicle's passenger cabin to be unbearable and thus, unusuable for its intended purpose."), Id. ¶ 5 (alleging that the "bacteria, fungus, mold, and spores" that are "blown into the passenger cabin" "can cause respiratory problems and aggravate allergies"), Id. ¶¶ 65-6 (alleging that the molds present in the HVAC System of the Class Vehicles "are known to secrete mycotoxins" and that "[m]ycotoxins are toxic to humans and animals"), Id. ¶ 67 (describing the defect as potentially "presenting a risk to [consumers'] health and safety"), Id. ¶ 74 (incorporating an arbitration panel's finding that "the odor substantially impaired the use, value and safety of the vehicle"), Id. ¶ 97 (quoting NHTSA complaint referring to defect as "this potentially fatal condition for susceptible people") ). That is all that is required of Plaintiffs at this stage. See , e.g. , Johnson v. Jaguar Cars, Inc. , No. 1:05-CV-3161-RLV, 2006 WL 1627125, at *4 (N.D. Ga. June 6, 2006) (finding that plaintiff adequately alleged a cause of action for breach of implied warranty where plaintiff alleged brake defect and that Jaguar breached the implied warranty by selling vehicle of "insufficient quality" and "not fit for the ordinary purpose" for which it is used). The defects in the HVAC System may impact the safety, driveability, and usefulness of the Class Vehicles or they may not. That question will depend on the facts developed through discovery in the case and is thus not appropriate for resolution on a motion to dismiss.
In Johnson , the defendant cited some of the same authority cited by Mercedes in support of its motion to dismiss the claim for breach of implied warranty. Id. The court denied the motion, noting, "these cases involved review of a trial court's grant of the defendant's motion for summary judgment. The court's current inquiry is significantly different." Id. at *4 n.2. "Of course," as in Johnson , "whether the plaintiff[s] can survive a motion for summary judgment is not before the court at this time." Id. at *4 n.4.
ii. Are Plaintiff Amin's Implied Warranty Claims Time-Barred?
Mercedes next argues that Plaintiff Amin's claim for breach of implied warranty is time barred. (Doc. 17-1 at 13.) This argument is meritless. "Georgia applies a four-year statute of limitations to warranty claims, regardless of whether they are based on express warranties or implied warranties." Paws Holdings, LLC v. Daikin Indus., Ltd. , No. CV 116-058, 2017 WL 706624, at *14 (S.D. Ga. Feb. 22, 2017) ; see also McCabe v. Daimler AG , 948 F.Supp.2d 1347, 1361 (N.D. Ga. 2013). Under O.C.G.A. § 11-2-725, "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." Ga. Code Ann. § 11-2-725(2). "A breach of warranty occurs when tender of delivery is made ...." McCabe , 948 F.Supp.2d at 1361.
Mercedes argues that Plaintiff Amin's claim for implied warranty is time barred *1289 because Plaintiff Amin alleges that he purchased his Class Vehicle in November, 2012, and did not file suit in the Northern District until May, 2017. (Doc. 17-1 at 14). As Mercedes points out, Plaintiff Amin thus did not file suit until "more than six months after the expiration of the four-year limitations period." (Id. ) Plaintiffs argue that the claim is timely under Georgia's renewal statute, O.C.G.A. § 9-2-61(a), since Plaintiff Amin refiled "within six months of the California court's dismissal." (Doc. 18 at 15.) Plaintiffs make two alternative arguments: (1) that even if the renewal statute does not apply, the statute of limitations was tolled while Amin's claims were pending in the California court; and (2) that the Court should apply the doctrine of equitable tolling to Amin's claims in light of the California filing. (Id. at 15-16.) In its Reply, Mercedes correctly points out that the renewal statute cited by Plaintiffs is inapplicable in this case because it specifically does "not apply to contracts for the sale of goods covered by Article 2 of Title 11." O.C.G.A. § 9-2-61(b).
However, the Court does not need to address either of Plaintiffs' alternative arguments, because the plain language of O.C.G.A. § 11-2-725 is dispositive. Subsection (3) of that provision reads:
[w]here an action commenced within the time limited by subsection (1) of [ O.C.G.A. § 11-2-725 ] is so terminated as to leave available a remedy by another action for the same breach such other action may be commenced after the expiration of the time limited and within six months after the termination of the first action unless the termination resulted from voluntary discontinuance or from dismissal for failure or neglect to prosecute.
O.C.G.A. § 11-2-725(3). Plaintiffs' previous action in California plainly falls under this provision, and Plaintiff timely filed after dismissal. The Court need not address equitable tolling in light of such clear authority.[5] The language of this subsection renders Plaintiff Amin's claim for breach of implied warranty timely.
For the foregoing reasons, Plaintiffs have plausibly stated a claim for breach of implied warranty. Mercedes' Motion to Dismiss this claim is therefore DENIED.
d. Plaintiffs' Magnuson-Moss Claims
Mercedes argues that Plaintiffs' Magnuson-Moss claims should be dismissed. "The Act does not provide an independent cause of action for state law claims, only additional damages for breaches of warranty under state law." McCabe , 948 F.Supp.2d at 1364 (quoting Fedrick v. Mercedes-Benz USA, LLC , 366 F.Supp.2d 1190, 1200 n.14 (N.D. Ga. 2005) ). Therefore, for the reasons discussed above, Mercedes' motion is GRANTED as to Plaintiffs' Magnuson-Moss claims for breach of express warranty, and DENIED as to Plaintiffs' Magnuson-Moss claims for breach of implied warranty.
e. Plaintiffs' GFPBA Claims
The Court now turns to Plaintiffs' claims under Georgia's Fair Business Practices Act ("GFPBA") that Mercedes seeks to dismiss. "A private FBPA claim has three elements: a violation of the Act, causation, and injury." Tiismann v. Linda Martin Homes Corp. , 281 Ga. 137, 139, 637 S.E.2d 14, 17 (2006) (citations omitted) (internal alterations); see also Regency Nissan, Inc. v. Taylor , 194 Ga.App. 645, 391 S.E.2d 467, 470 (1990). In addition, "justifiable reliance is an essential element of an *1290 FBPA claim." Crown Ford, Inc. v. Crawford , 221 Ga.App. 881, 473 S.E.2d 554, 557 (1996) (citation omitted). Finally, "[e]stablishment of unfair or deceptive acts or practices, within the meaning of the FPBA, does not require proof of an intentional conduct on the part of defendant." Regency Nissan, Inc. v. Taylor , 194 Ga.App. 645, 391 S.E.2d 467, 470 (1990) (emphasis omitted).
i. Justifiable Reliance
Defendant argues that "Plaintiffs' GFPBA claim fails because they do not allege facts showing they have justifiably relied on any misrepresentation made by [Mercedes]." (Doc. 17-1 at 14.) See Crown Ford, Inc. , supra. However, as with other similar causes of action, "[w]here the plaintiff repeatedly confronts the defendant with the apparent falsity of its representations, and the defendant repeatedly confirms its original statement, asserting special knowledge, reliance is justified." DeLong Equip. Co. v. Washington Mills Abrasive Co. , 887 F.2d 1499, 1519-20 (11th Cir. 1989) (citing Georgia-Carolina Brick & Tile Co. v. Brown , 153 Ga.App. 747, 266 S.E.2d 531, 539 (1980) ).
Plaintiffs allege that Mercedes "learned of the HVAC System Defect at least as early as 2008, when a Class Vehicle owner brought-and won-a consumer arbitration action against Mercedes for the Defect." (Compl., Doc. 1 ¶ 73.) Plaintiffs highlight testimony from the arbitration and allege that during the proceedings, an employee of Mercedes described the defect:
The system works in such a way that it will-the AC is supposed to get rid of all the humidity from the air, ok? And in some cases, you know, where you shut the car off, some water will remain in the evaporator ... what happens is it will accumulate there. It will not fully drain.
(Id. ¶ 75.) Further, Plaintiffs allege that "Mercedes went on to say that the water that accumulates is what ultimately leads to the moldy odor" and that "[u]nder questioning from the Arbitration Board, Mercedes admitted that as long as the consumer keeps the car, she's going to have to keep getting Mercedes's temporary 'fix', which one Board member called 'a band-aid.' " (Id. ¶¶ 75-76.)
Plaintiffs also allege that Mercedes issued several Technical Service Bulletins addressing the alleged defect as far back as 2007. (Compl., Doc. 1 ¶¶ 80-84.) One of these Bulletins allegedly stated:
A moldy (foul) odor can typically occur for a short time after engine start in all vehicles with air conditioning, is a technically inherent effect which likewise cannot be eliminated by cleaning the evaporator.
(Id. ¶ 83.) Another allegedly stated that the smell "is due to natural causes, repairs do not remedy the problem." (Id. ¶ 84.)
In addition, Plaintiffs allege that Mercedes actively concealed the Defect and their knowledge of it from consumers. For example, Plaintiffs allege that
[d]espite Mercedes's knowledge of the Defect, Mercedes told Class Members who called its customer service about the HVAC System Defect that Mercedes had never heard of the problem before and that no others had reported issues with their Class Vehicles' HVAC Systems, and made Class members pay for temporary "band-aid" repair measures out-of-pocket.
(Id. ¶ 118.) Plaintiffs also allege that despite knowing about the defective HVAC Systems, Mercedes concealed the defect by making misleading representations about the quality of the "climate control" systems of the cars. (See , e.g. , id. ¶ 111 (describing Mercedes' "rigorous 27-point service checklist" as including "pre-road *1291 test checks of the air cleaner/filter and climate control system"); id. ¶ 112 (describing Mercedes' advertising regarding the cleanliness of the air in their vehicles); id. (quoting putative Mercedes advertising: "Standard dual-zone automatic climate control allows the driver and front passenger to enjoy individualized comfort in any season."); id. ¶ 114 (alleging that Certified Pre-Owned Mercedes Vehicles "undergo a 'climate control inspection' during a road test conducted by a Mercedes-Benz technician and '[a]ny noted deficiencies are repaired, replaced or reconditioned' before the vehicle is sold.").
Finally, Plaintiffs allege that when they confronted Mercedes about the issue, Mercedes (1) denied the existence of the defect, and (2) blamed the smell on consumers. (Compl., Doc. 1 ¶ 127.) Plaintiffs allege that in an effort to conceal the defect, Mercedes
forc[ed] Class Members to bear the cost of temporary measures to address the moldy smells, while at the same time performing those services at no (or lower) cost for those who complained vocally and often, calling these 'goodwill' services.
(Id. ¶ 119e.) In light of all of these allegations, Plaintiffs have plausibly alleged that Mercedes knew of but failed to disclose a material defect in the Class Vehicles. Plaintiffs have further plausibly alleged that in an effort to address the defect, they "repeatedly confront[ed] [Mercedes] with the apparent falsity of its representations, and [Mercedes] repeatedly confirm[ed] its original statement, asserting special knowledge ...." DeLong Equip. Co. , 887 F.2d at 1519-20. Therefore, Plaintiffs' have plausibly alleged justifiable reliance.
ii. Plaintiff Amin's GFPBA Claim is Not Time-Barred
Mercedes argues that Plaintiff Amin's GFBPA claim is time-barred because, according to the Complaint, Amin first noticed the smell in 2014 and did not file suit until 2017-outside of the two-year statute of limitations. (Doc 17-1 at 16.) A private right of action under the GFBPA must be filed no "[m]ore than two years after the person bringing the action knew or should have known of the occurrence of the alleged violation ...." O.C.G.A. § 10-1-401(1) ; see also Fortson v. Best Rate Funding, Corp. , No. 1:13-CV-4102-CC, 2014 WL 11456286, at *3 (N.D. Ga. Sept. 2, 2014), aff'd , 602 Fed.Appx. 479 (11th Cir. 2015) (quoting O.C.G.A. § 10-1-401(a)(1) ). "The statute of limitations begins to run on a cause of action on the date that suit on the claim can first be successfully maintained." Chambers v. Green , 245 Ga.App. 814, 539 S.E.2d 181, 182 (2000) (quoting Limoli v. First Georgia Bank , 147 Ga.App. 755, 250 S.E.2d 155, 156 (1978) ). "Mere ignorance of the facts constituting a cause of action does not prevent the running of the statute of limitations, for a plaintiff must exercise reasonable diligence to learn of the existence of a cause of action." Limoli , 250 S.E.2d at 157 (citations omitted).
In Fortson , the court denied a motion to dismiss the plaintiff's GFBPA claims on statute of limitations grounds where it was "not apparent on the face of the Complaint when Plaintiff knew or should have known of the alleged violation of the GFBPA ...." 2014 WL 11456286 at *3-4.[6] As in Fortson , here, Plaintiffs have alleged conduct by Mercedes that makes it unclear when Plaintiffs should have known about the alleged violation. This is because Plaintiffs *1292 allege that Mercedes made misrepresentations about the nature of the defect despite Plaintiffs' reasonable diligence and in the face of continuous misrepresentations by Mercedes. Mercedes' motion therefore fails as to this aspect of Plaintiffs' GFBPA claims.
iii. Did Plaintiff Patel Comply with the Statutory Notice Requirements?
Mercedes argues that Plaintiff Patel failed to satisfy the notice requirement of the GFBPA under § 10-1-399(b). Mercedes asserts that Plaintiff Patel may not piggyback on the pre-suit demand sent on behalf of Plaintiff Amin "individually and on behalf of all others similarly situated" because the GFBPA does not permit representative claims. See O.C.G.A. § 10-1-399(a) (providing that an injured person "may bring an action individually, but not in a representative capacity"); & O.C.G.A. § 10-1-399(b) (requiring pre-suit written demand to identify "claimant").
"The notice requirement of O.C.G.A. § 10-1-399(b) is to be liberally construed, and the sufficiency of notice is a question for the court." Lynas v. Williams , 216 Ga.App. 434, 454 S.E.2d 570, 573 (1995). State statutes, like the GFBPA, "precluding class actions for specific kinds of claims conflict with Rule 23 and so [are] displaced for claims in federal court so long as applying Rule 23 does not 'abridge, enlarge or modify any substantive right.' " Lisk v. Lumber One Wood Preserving, LLC , 792 F.3d 1331, 1335 (11th Cir. 2015) (holding that Rule 23 applied rather than Alabama Deceptive Trade Practices Act's prohibition on class actions). Federal Rule 23 does not "abridge, enlarge or modify any substantive right" of the parties under the GFBPA. Id. ("The disputed issue is not whether Mr. Lisk and other buyers are entitled to redress for any misrepresentation; they are. The disputed issue is only whether they may seek redress in one action or must instead bring separate actions-whether any representative action may be brought by a consumer or must be brought by the Attorney General or a district attorney. Because Rule 23 does not 'abridge, enlarge or modify any substantive right,' Rule 23 is valid and applies in this action"). Because Federal Rule 23 trumps the representative prohibition of the GFBPA for claims brought in federal court, Plaintiff Patel may rely on the pre-suit demand sent by Plaintiff Amin on behalf of "all other on behalf of all others similarly situated" to satisfy the requirements of O.C.G.A. § 10-1-399(b). See Schorr v. Countrywide Home Loans, Inc. , 287 Ga. 570, 697 S.E.2d 827, 827 (2010) (answering in the affirmative the certified question of district court whether named plaintiffs in a class action may satisfy statutory pre-suit written demand requirement for liquidated damages on behalf of putative class action members, and finding no reason not to apply in this case the general rule allowing the named plaintiffs in a class action to satisfy preconditions for suit on behalf of the entire class); see also Sloan v. Gen. Motors LLC , No. 16-CV-07244-EMC, 2017 WL 3283998, at *8 (N.D. Cal. Aug. 1, 2017) (finding that pre-suit notice requirement in Georgia Fair Business Practices Act, O.C.G.A. § 10-1-399(b)"do[es] not appear to require pre-suit notice by individual plaintiffs.").
For these reasons, Mercedes' motion to dismiss Plaintiffs GFBPA claims is DENIED.
f. Plaintiffs' GUDTPA Allegations
The Court now turns to Plaintiffs' allegations regarding Georgia's Uniform Deceptive Trade Practices Act ("GUDTPA"), O.C.G.A. § 10-1-370, et seq. Under GUDTPA, "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable."
*1293 O.C.G.A. § 10-1-373(a). An injunction under this provision requires the allegation (and presentation of evidence showing) of a likelihood of future harm by a deceptive trade practice. See Catrett v. Landmark Dodge, Inc. , 253 Ga.App. 639, 560 S.E.2d 101, 106 (2002) (granting summary judgment on plaintiff's GUDTPA claim where plaintiff had "not presented any evidence-or even alleged-that he '[was] likely to be damaged' by [defendant's deceptive] trade practices in the future") (quoting O.C.G.A. § 10-1-373(a) ); Helpling v. Rheem Mfg. Co. , No. 1:15-CV-2247-WSD, 2016 WL 1222264, at *15-16 (N.D. Ga. Mar. 23, 2016) ("A plaintiff who demonstrates past harm, but does not allege ongoing or future harm, has not shown that he is likely to be damaged within the meaning of section 10-1-373(a).") (quoting Silverstein v. Procter & Gamble Mfg. Co. , No. CV 108-003, 2008 WL 4889677, at *4 (S.D. Ga. Nov. 12, 2008) ).
Mercedes argues that "Plaintiffs do not plead facts plausibly alleging they are likely to be damaged by any future conduct by [Mercedes]." (Doc. 17-1 at 18.) Although Mercedes acknowledges that Plaintiffs "claim they might experience foul odors in their vehicles in the future," (Id. ), it argues that this is merely an allegation of harm involving past conduct. (Id. ) (citing Garcia v. Chrysler Group LLC , 127 F.Supp.3d 212, 238 (S.D.N.Y. 2015) ). Mercedes offers two primary cases in support of this argument: Terrill v. Electrolux Home Prods., Inc. , 753 F.Supp.2d 1272 (S.D. Ga. 2010), and Buske v. Owens Corning (Corp.) , No. 1:16-CV-709-TWT, 2017 WL 1062371 (N.D. Ga. Mar. 21, 2017).
In Terrill , plaintiffs brought a putative class action alleging a serious design defect in front-loading washing machines manufactured and sold by defendant Electroloux. 753 F.Supp.2d at 1278-1280. "Specifically, Plaintiffs allege[d] that design defects in the steel drum, gasket, and bellows cause the washing machines to accumulate mold and mildew." Id. at 1278. Plaintiffs in that case sought an injunction against Electrolux under GUDTPA. Id. at 1280. They alleged that "Electrolux misrepresented the quality and abilities of Frigidaire front-load washing machines, that Plaintiffs relied on these misrepresentations when they purchased their machines, and that they suffered damages as a result." Id. at 1291. The court dismissed the GUDTPA claim because it found that the plaintiffs did "not allege that they will be damaged in the future absent an injunction targeted at Electrolux's advertising campaigns, much less allege how they will be damaged." Id. (emphasis in original).
Buske involved allegedly defective roofing shingles. 2017 WL 1062371, at *1. In that case, plaintiffs alleged that the defendant's shingles suffered from a latent defect of moisture being trapped "during the manufacturing process ... within the layers of the Shingle." Id. (citation omitted). Plaintiffs sought an injunction under GUDTPA enjoining "Owens Corning from selling or marketing the Shingles in the unfair and deceptive manner as" the plaintiffs had alleged. Id. at *3. The court dismissed the plaintiffs' GUDTPA claim because "the Plaintiffs have not alleged that they intend to purchase the Shingles in the future." Id. Although the plaintiffs argued that they were suffering ongoing harm as a result of the defendant's refusal to "honor warranty claims, repair or replace defective Shingles, or repair subsequent property damage," the court held that these were all harms the plaintiffs had "already suffered." Id. The plaintiffs had thus failed to allege the likelihood of future harm. Id.
The similarity among the factual contexts of this case, Terrill , and Buske , is inescapable. In this case, most of the harm *1294 Plaintiffs allege is associated with allegedly deceptive practices occuring before or during the purchase of the class vehicles or in their misrepresentations as to issues of repair. (See , e.g. , id. ¶ 217 ("Mercedes advertised the Class Vehicles ... with the intent not to sell them as advertised ...."); id. ¶ 225 ("Had Plaintiffs ... known [about the defect], they would not have purchased ... a Class Vehicle, or would have paid less for them.").) To the extent that Plaintiffs ask the Court to enjoin Mercedes' marketing and advertising practices, (e.g. , Compl., ¶ 217), this case is no different than Buske. "Here," as in Buske , "the Plaintiffs have not alleged that they intend to purchase [a Class Vehicle] in the future. Thus, they will not benefit from an injunction relating to the Defendants' marketing scheme." 2017 WL 1062371, at *3.
Bolinger v. First Multiple Listing Serv., Inc. , cited by Plaintiffs, is instructive. 838 F.Supp.2d 1340, 1364 (N.D. Ga. 2012) (Story, J.). That case involved a database (First Multiple Listing Service ("FMLS") ), that listed real estate for sale but included certain fees paid to the database by brokers. Id. at 1344-45. Plaintiffs alleged that these hidden fees were "not disclosed to purchasers and sellers" and that they "establish[ed] a 'floor' or minimum commission rate for residential real estate settlements involving FMLS ...." Id. at 1346 (internal quotations and citation omitted). Plaintiffs alleged that these fees and other kickbacks violated GUDTPA. Id. at 1363-64. Defendants moved to dismiss this claim in part because, they argued, the plaintiffs lacked standing because they "failed to allege a likelihood of future injury caused by [defendants]." Id. The Court in Bolinger denied defendants' motion because the alleged fees and kickbacks "harm[ed] consumer welfare," and because given the ubiquity of the database in question, "at least at some point in the future, the properties of Plaintiffs will be bought and sold" while utilizing FMLS and incurring the fees. Id. at 1364.
Here, unlike Bolinger , Plaintiffs have not alleged that they will likely buy another class vehicle. They do not allege that putative class members are likely to again be misled by Mercedes' advertising. In short, Plaintiffs have plausibly alleged that they have been damaged, but they have not sufficiently alleged that they are "likely to be damaged" again by Mercedes advertising and marketing. O.C.G.A. § 10-1-373(a). Nor do Plaintiffs allegations about the near-certain reoccurrence of the mold and mildew qualify under this section. While this is harm that will likely occur in the future if Plaintiffs' allegations are true, it is the result of a previous alleged deceptive trade practice. Unlike in Bolinger , an injunction would not prevent the reoccurrence of the harm alleged by Plaintiffs. See Catrett , 560 S.E.2d at 106 (granting summary judgment for defendant on plaintiff's GUDTPA claim involving misrepresentations about quality of vehicle where "[d]amage allegedly caused by the 1999 misrepresentation cannot be remedied through an injunction").
Finally, the Court turns to Plaintiffs' allegations that they must periodically take their vehicles for service regarding the defect and that Mercedes (1) denies the existence of the defect and (2) charges Plaintiffs for non-permanent solutions. Plaintiffs argue that they have alleged harm that is both ongoing and will likely occur in the future. (Doc. 18 at 30-31.) They point to the following language in their complaint:
As a direct and proximate result of Mercedes' unfair or deceptive acts or practices, Plaintiffs ... will continue to suffer actual damages in that they ... may continue to experience their Class Vehicles' HVAC Systems growing mold and emitting noxious odors for which there is *1295 no permanent fix and for which they must pay out of pocket.
(Compl., ¶ 228.) Plaintiffs further allege that the denial of the defect by Mercedes and the regular, periodic charging of Class Members for temporary "band-aid" fixes-flushing the system and changing the air filters-are deceptive trade practices. (See , e.g. , Compl., Doc. 1 ¶ 7.) Under O.C.G.A. § 10-1-372(a) :
A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he: ... (5) Represents that goods or services have ... characteristics ... that they do not have ...; [or] (7) Represents that goods or services are of a particular standard, quality, or grade ... if they are of another ....
O.C.G.A. § 10-1-372(a). As opposed to Mercedes' allegedly deceptive advertising, Plaintiffs have plausibly alleged that they are "likely to be damaged by [this] deceptive trade practice." O.C.G.A. § 10-1-373(a). This is because Plaintiffs have alleged that when they brought their vehicles to Mercedes for service related to the defect, Mercedes represented that the Class Vehicles were defect-free and possessed a certain quality with respect to the HVAC Systems-namely, the quality of being free from the specific defect alleged. Unlike Plaintiffs' other allegations, these concern both ongoing and future harm of the type contemplated by O.C.G.A. § 10-1-373. Compare Bolinger , 838 F.Supp.2d at 1364 (future harm involving real estate database fees sufficiently alleged where plaintiffs alleged that "at least at some point in the future, the properties of Plaintiffs will be bought and sold") with Helpling , 2016 WL 1222264, at *7, 16 (dismissing plaintiffs' GUDTPA claims where Plaintiffs' allegations "do not show that the Rheem units at issue continue to have problems" after repair or that "the application of A/C Renew did not resolve the defects alleged" and where "the Complaint contains only the vaguest suggestions that A/C Renew may cause some future damage").[7] Because Plaintiffs have plausibly alleged both ongoing and a likelihood of future harm from these specific deceptive trade practices in connection with vehicle servicing, this sliver of Plaintiffs GUDTPA claim survives Mercedes' motion to dismiss.[8]
Therefore, Mercedes' Motion to Dismiss Plaintiffs' GUDTPA injunctive relief claim is DENIED with respect to Plaintiffs' allegations regarding (1) Mercedes' ongoing denial of the HVAC defect and (2) their charging purchasers for ongoing repair procedures that do not actually fix the mold and odor producing characteristics of the HVAC system. Defendant's motion is GRANTED as to all other GUDTPA claims.
g. Plaintiffs' Fraudulent Concealment Allegations
Mercedes argues that Plaintiffs' claim for fraudulent concealment fails because Plaintiffs have not alleged "facts giving rise to a duty to disclose." (Doc. 17-1 at 20.) The Court finds this argument without merit.
*1296 "In a claim for fraudulent concealment, a plaintiff must prove the same five elements of a fraud claim." Coleman v. H2S Holdings, LLC , 230 F.Supp.3d 1313, 1321 (N.D. Ga. 2017), appeal dismissed sub nom. Flowers v. Here to Serve Restaurants, Inc. , No. 17-10761-FF, 2017 WL 3668852 (11th Cir. May 25, 2017) (quoting Hanlon v. Thornton , 218 Ga.App. 500, 462 S.E.2d 154 (1995) ). "Under Georgia law, '[t]he tort of fraud has five elements: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages.' " McCabe , 948 F.Supp.2d at 1368 (N.D. Ga. 2013) (quoting ReMax N. Atlanta v. Clark , 244 Ga.App. 890, 537 S.E.2d 138, 141 (2000) ). "In the context of fraudulent-concealment claims, the scienter element requires that the alleged defrauder had actual, not merely constructive, knowledge of the fact concealed." Id. (citation omitted). "In addition, only the '[s]uppression of a material fact which a party is under an obligation to communicate' can support such a claim." Id. (quoting O.C.G.A. § 23-2-53 ).
"The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." O.C.G.A. § 23-2-53. "The particular circumstances of the case may give rise to an obligation to communicate where there is a concealment of 'intrinsic qualities of the article which the other party by the exercise of ordinary prudence and caution could not discover.' " McCabe , 948 F.Supp.2d at 1368 (quoting Rivers v. BMW of N. Am., Inc. , 214 Ga.App. 880, 449 S.E.2d 337, 340 (1994) ; see also Bill Spreen Toyota, Inc. v. Jenquin , 163 Ga.App. 855, 294 S.E.2d 533, 539 (1982).
As highlighted above with respect to Plaintiffs' GFBPA claims,[9] Plaintiffs have alleged that (1) Mercedes knew about the defect as early as 2008; (2) Mercedes denied the existence of the defect when confronted about it by consumers; and (3) Mercedes actively concealed this defect. (See, e.g. , Compl., Doc. 1 ¶¶ 75, 84, 118, 127.) Thus, as stated above, Plaintiffs have plausibly alleged that Mercedes concealed an intrinsic quality of the Class Vehicles that Plaintiffs and consumers generally could not have discovered in the exercise of reasonable care. In light of these allegations, the particular circumstances of this case support a finding that Plaintiffs have plausibly alleged justifiable reliance. Under these circumstances, Plaintiffs have plausibly alleged that Mercedes had an obligation under Georgia law to disclose the defective HVAC system and failed to do so. Accordingly, Plaintiffs have stated a claim for fraudulent concealment and Mercedes' Motion to Dismiss this claim is DENIED.
h. Plaintiffs' Alternative Claim for Unjust Enrichment
Mercedes argues that "Plaintiffs' unjust enrichment claims are precluded by their allegations of an express warranty that covers the alleged defect." (Doc. 17-1 at 22.) However, Plaintiffs' claim for breach of express warranty has been dismissed. To the extent that Mercedes applies this same argument to Plaintiffs' claims for breach of implied warranty, that argument fails since Plaintiffs' claim for unjust enrichment was pled in the alternative. "While a party, indeed, cannot recover under both a breach of contract and unjust enrichment theory, a plaintiff may plead these claims in the alternative." Clark v. Aaron's, Inc. , 914 F.Supp.2d 1301, 1309 (N.D. Ga. 2012) (emphasis in original); see also *1297 Techjet Innovations Corp. v. Benjelloun , 203 F.Supp.3d 1219, 1234 (N.D. Ga. 2016). This is the sole ground upon which Mercedes moves to dismiss the unjust enrichment claim and the Court finds that it lacks merit. Thus, the Court DENIES Mercedes' Motion to Dismiss Plaintiffs' claim for unjust enrichment.
i. Plaintiffs' Claims for Injunctive Relief
Mercedes challenges Plaintiffs' prayer for injunctive relief. (Doc. 17-1 at 31.) While some courts have entertained injunctive relief at the motion to dismiss stage, see , e.g. , Buske , 2017 WL 1062371, at *3, this Court declines to do so. Plaintiffs may later prove that they are entitled to injunctive relief, or they may not, but they will not be stripped of the opportunity to do so before the Court has the opportunity to weigh equitable relief factors upon a fuller evidentiary record. Therefore, Mercedes' motion to dismiss Plaintiffs' prayer for injunctive relief is DENIED.
IV. CONCLUSION
For the foregoing reasons, Mercedes' Motion to Dismiss [Doc. 17] is GRANTED in part and DENIED in part. Mercedes' Motion is GRANTED as to (a) Plaintiffs' claims for breach of express warranty, (b) Magnuson-Moss breach of express warranty, (c) violation of GUDTPA regarding Mercedes' marketing and advertising. Mercedes' Motion is DENIED as to all other claims. The parties are DIRECTED to confer and develop a scheduling order that addresses the time frames for fact and expert discovery as well as timing of Plaintiffs' class certification motion and briefing. The parties shall also address in their submission the extent to which discovery information and testimony gleaned in the parallel California action against Mercedes Benz, Manan Bhatt et al. v. Mercedes-Benz USA LLC , No. 2:16-cv-03171 (C.D. Cal. 2017), may be relied upon in this case so as to avoid redundancy and time delays. The parties shall file their proposed scheduling order within 15 days of the entry of this Order.
IT IS SO ORDERED this 13th day of March, 2018.

According to the Complaint,
[t]he vehicles at issue in this action include the 2004-2012 Mercedes A-Class, 2001-2017 Mercedes C-Class, 2000-2014 Mercedes CL-Class, 2013-2017 Mercedes CLA-Class, 2003-2009 Mercedes CLK-Class, 2004-2017 Mercedes CLS-Class, 2003-2016 Mercedes E-Class, 2007-2017 Mercedes GLClass, 2010-2016 Mercedes GLK-Class, 2006-2016 Mercedes M-Class, 2017 Mercedes GLE-Class, 2006-2015 Mercedes R-Class, 1999-2017 Mercedes SClass, 2003-2012 Mercedes SL-Class, 2004-2016 Mercedes SLK-Class, and 2002-2013 Maybach 57 and 62.
(Compl., Doc. 1 ¶ 2.)

Although two defendants are named in this action, Mercedes has filed this Motion alone. Daimler AG has not been served and has appeared specially to oppose Plaintiffs' pending Motion for Service by Alternate Means (Doc. 25). Therefore, when discussing allegations involving both defendants, the Court refers to them in plural form, but when referring to arguments, the Court uses the singular "Defendant" or "Mercedes."

The following description is taken from the allegations of Plaintiffs' Complaint, (Doc. 1), taken in the light most favorable to Plaintiffs.

It is certainly possible that Defendants may prove that the defect is not uniform and that there are multiple, materially distinct groups of vehicles and defects that are more appropriately dealt with as subclasses or that the alleged commonality of the HVAC systems is simply not true. That discussion is better suited for a later stage of the litigation, however, such as at class certification or summary judgment.

The Court finds it strange and concerning that Mercedes would cite to subsection (1) of O.C.G.A. § 11-2-725, dealing with the general contract tolling provision, in its briefing without noting the renewal provision covering contract actions, subsection (3).

However, the Fortson court did dismiss the plaintiff's GFBPA claims on other grounds not relevant here. 2014 WL 11456286, at *5.

The Court notes, though, that the Court in Helpling ultimately commented that even if Plaintiffs had alleged some future harm, the Defendant's "misrepresentations or omissions would not have caused those future harms to Taylor or any class member" because they already had purchased the Rheem units at issue. The Court may well reach that same conclusion at summary judgment when the Court properly can consider evidence introduced. Catrett , 560 S.E.2d at 106.

The Court notes that not all deceptive trade practices can be practically enjoined and that it is not apparent at this juncture why Plaintiffs alleged harms could not be remedied by money and without the equitable relief requested.

See III.e., supra.